❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about the location of the cellular telephone<br>assigned call number 713-281-2632, (the "Target Cell<br>Phone"), whose service provider is Verizon Wireless, as<br>further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.23-865M(NJ)<br>     Matter No. 2022R00355 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 2/14/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 1/31/2023 @ 12:41 p.m.

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.     Records and information associated with the cellular devices assigned call numbers **713-281-2632** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.     Information about the location of **Target Cell Phone**, that is within the possession, custody, or control of Verizon Cellular.

3.     The Target Cell Phone.

Case 2:23-mj-00865-NJ     Filed 01/31/23     Page 3 of 104     Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

### I.     Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 25, 2023, to present:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

Page 3

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

II. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING and other identified and unidentified subjects during the period of January 25, 2023, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Page 5

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about the location of the cellular telephone assigned call<br>number 713-281-2632, (the "Target Cell Phone"), whose service<br>provider is Verizon Wireless, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. 23    865M(NJ)

Matter No. 2022R00355

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 & 846<br>18 U.S.C. § 920(o) | Distribution and possession with intent to distribute controlled substances;<br>Conspiracy to distribute and possess with the intent to distribute controlled<br>substances; and Possession of a machinegun. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA TFO Aaron Hoppe

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 1/31/2023

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2022R355**

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **713-281-2632**, (the "Target Cell Phone"), whose service provider is Verizon Wireless ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The Target Cell Phone are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

4.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

5.     I have been a law enforcement officer since May 30, 2007. I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau. I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present. I have been a part of hundreds of state and federal investigations related to drug activity.

6.     I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

7.     I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone. I

Page 2

know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

8.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

9.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

Page 3

10.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

11.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

12.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

13.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING and other identified and

unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. PROBABLE CAUSE

### A. BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

14.     Beginning in July 2022, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit, hereinafter referred to as "case agents," began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin (WI) which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm). Case agents also determined that members of the ADTO utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

15.     On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine, cocaine, and "ghost" guns which are untraceable along with switches. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS.

16.     CS indicated that he/she knew that MERIWETHER went by the "rapper" name

Page 5

"Chef Don Juan" and had videos posted on YouTube. I reviewed a YouTube video of "Chef Don Juan" and observed an individual identified as MERIWETHER in the video along with two other individuals. Each individual in the video is handling a handgun or weapon, some with an extended magazine clip and one with a drum magazine.

17.     CS further indicated MERIWETHER's had a social media account with Instagram and provide an account name of "thereal_chefdon92". Law enforcement observed MERIWETHER's account of "thereal_chefdon92". MERIWETHER's accounts contained several photos, videos, and music videos of himself, consistent with the account in fact belong to MERIWETHER.

18.     The CS indicated that he/she has known MERIWETHER for several years. The CS indicated that MERIWETHER had been arrested previously for a heroin related death investigation in Waukesha County, but the case had been dismissed. I confirmed that MERIWETHER was charged in Waukesha County Case 2021CF296 with one count of first-degree reckless homicide on February 17, 2021, but the case was dismissed on July 21, 2021.

19.     The CS indicated that MERIWETHER sells guns, including "ghost guns", which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable. In addition, CS indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon. This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

Page 6

20.      CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area.  CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics.  CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop".

21.      CS stated that on July 1, 2022, he/she had met with MERIWETHER.  MERIWETHER was in possession of several hundred grams of heroin/fentanyl and at least one pound of methamphetamine.  CS took pictures of the product along with a vehicle operated by MERIWETHER, and the residence where CS met with MERIWETHER.

22.      CS stated that he/she had set up an anticipated transaction of 50 grams of heroin in exchange for $2,500.00.  The planned transaction was to take place on July 5, 2022, in the Waukesha County Area.  CS indicated that he/she had contacted MERIWETHER's known telephone number 414-999-6172.

23.      I queried 414-999-6172 using a reliable law enforcement database, which identified the mobile provider as T-Mobile.

24.      I also reviewed Wisconsin Department of Transportation (DOT) Photos, Waukesha County Booking photos, and the YouTube video of "Chef Don Juan" and determined the information provided by CS is in fact regarding the subject identified as Azjuan K. MERIWETHER.

25.      CS information is credible and reliable, CS has given information concerning

Page 7

individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

## B. UNDERCOVER CONTROLLED BUYS WITH THE ARMED DRUG TRAFFICKING ORGANIZATION (ADTO) AND IDENTIFICATION OF MEMBERS

26.　　Generally, during the below listed controlled buys of controlled substances the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media.

### a. First Undercover Transaction with MERIWETHER and WILLIAMS using 414-999-6172 – July 5, 2022

27.　　On Tuesday, July 5, 2022, CS coordinated a purchase of approximately 50.4 grams of heroin from MERIWETHER for $2,500. The CS stated that he/she had contacted

MERIWETHER prior to and during the transaction using telephone number 414-999-6172. The transaction took place at 12621 West North Avenue, Brookfield, Wisconsin. At approximately 11:29 a.m. CS met with MERIWETHER inside his black Mazda, bearing Wisconsin license plate AGJ-7529. Also, in the front passenger seat of the Mazda was MERIWETHER's girlfriend and mother of his child, who was later identified as Savanna WILLIAMS. Once inside the vehicle, CS provided MERIWETHER with $2,500 and received the suspected heroin directly from Meriwether. The transaction was completed at 11:31 a.m., when CS exited the vehicle and entered his/her vehicle. After the transaction, CS provided law enforcement a plastic bag which contained a total of 9 square like pieces of an off-white in color, substance. Law enforcement weighted and tested the controlled substance. The substance had a total weight of 50.4 grams and a positive test for fentanyl. This information is consistent with information provided by CS that MERIWETHER sells a product MERIWETHER says is heroin but is "pure" fentanyl.

28. Immediately following the transaction, law enforcement followed MERIWETHER and WILLIAMS to a restaurant identified as the Golden Nest Pancakes and Café located at 11250 W. Burleigh Street in the City of Wauwatosa. Law enforcement was able to obtain pictures during this time verifying and showing MERIWETHER exiting the same black Mazda which just completed the drug transaction with CS. Additionally, as part of the investigation into this ADTO, law enforcement had previously learned the black Mazda was consistently operated by MERIWETHER.

29. Law enforcement also obtained City of Waukesha Police Department reports from 2020 and 2021, which showed that MERIWETHER was dating Savanna WILLIAMS and that MERIWETHER was known to operate the same black Mazda 6. MERIWETHER also admitted to investigators in a recorded interview in February of 2021, that he had and was currently selling

Page 9

heroin.

**b. Second Undercover Transaction with MERIWETHER and WILLIAMS Using 414-999-6172 – July 8, 2022, and Identification of FRANKLIN**

30.     On Friday, July 8, 2022, CS coordinated a purchase of approximately 50.2 grams of suspected heroin for $2,500 from MERIWETHER using telephone number 414-999-6172. CS spoken with the MERIWETHER and MERIWETHER had informed him/her that he had to go to Indiana, but his girlfriend (WILLIAMS) was going to complete the heroin transaction that morning. MERIWETHER instructed CS to go to the North Pointe Apartments, specifically at 9504 North Green Bay Rd, where WILLIAMS is known to reside, and a residence previously associated with MERIWETHER. As CS was enroute to the location, he/she received another call from MERIWETHER indicating that WILLIAMS would now meet CS at the BP gas station located at 9051 N. Green Bay Rd.  The transaction was expected to take place at 12621 West North Avenue, Brookfield, Wisconsin. Due to a change in location, the transaction eventually occurred at a location identified as a BP gas station located at 9051 North Green Bay Road, Brown Deer, Wisconsin.

31.     At approximately 12:00pm CS arrived at the lot.  CS exited his/her vehicle and entered the black Mazda via the rear passenger door.  CS provided the $2,500.00 to the front seat passenger who was identified as WILLIAMS.  After providing the money to WILLIAMS, he/she was handed a small box which contained 9 squares/cubes of an off-white in color substance, similar to the first transaction.  CS indicated that the unidentified black female operator of the vehicle handed the suspected heroin to him/her.  CS indicated there was also a small child inside the Mazda.  After completing the transaction, CS exited the Mazda and returned to his/her vehicle.  CS met with law enforcement and turn oved the box containing suspected heroin.  Law

Page 10

enforcement later weighed and tested the suspected heroin and received a total weight of 50.2 grams and a positive result for Fentanyl.

32.     Prior to the controlled drug buy, law enforcement arrived at the BP to conduct surveillance. Law enforcement observed the black Mazda 6, bearing Wisconsin registration AGJ-7529 in the parking lot of the BP. An unidentified black female operator exiting the car. Law enforcement also observed a front seat passenger in the Mazda and what appeared to be a child in a car seat located in the rear driver's side seat.

33.     Following the undercover controlled buy, on July 13, 2022, law enforcement met with CS. CS indicated that he/she was contacted by MERIWETHER who informed CS that MERIWETHER "plug" wanted to purchase a vehicle and requested CS to contact the "plug" about a vehicle CS was selling. MERIWETHER provided the telephone number of 414-412-6719 as his "plug". CS called the "plug" using telephone number 414-412-6719.

34.     During this investigation, I learned that the user of that phone number has been identified as Dontrell Q. FRANKLIN. FRANKLIN was arrested by the United States Marshals Task Force (USMTF) on August 2, 2022, based on several outstanding arrest warrants from an unrelated incident. During his arrest, FRANKLIN was in possession of a firearm, approximately $35,000.00, and a cell phone with the number "412-6719" written on the back of the phone. FRANKLIN was bail out of custody on August 26, 2022. I also later confirmed with CS that FRANKLIN was the person he/she had met with prior in regard to purchasing a vehicle.

c.  **Third Undercover Transaction with MERIWETHER Using 414-999-6172 – August 3, 2022**

35.     On August 03, 2022, CS coordinated a purchase of approximately 50.0 grams of suspected heroin from MERIWETHER for $2500.00 using telephone number 414-999-6172. The

transaction took place at 12621 West North Avenue, Brookfield, Wisconsin. During the controlled drug buy, MERIWETHER arrived alone, operating a 2017 Hyundai Elantra bearing Indiana registration 828YZ (Elantra). MERIWETHER exited his vehicle and entered CS's vehicle and completed the transaction with CS. During the transaction, MERIWETHER informed CS that he was going to Indiana for the next two weeks but would have additional heroin ready if CS needed it before MERIWETHER returned. MERIWETHER informed CS that he would have someone else meet with CS if needed. Then MERIWETHER exited CS's vehicle and entering his vehicle and departing the area. I later weighed and tested the suspected heroin obtained from MERIWETHER and learned that the total weight was 50.5 grams and the substance later tested positive for Fentanyl.

### d. Fourth Undercover Transaction with MERIWETHER and RODRIGUEZ-PEREZ Using 414-999-6172 and 512-940-1862 – August 15, 2022

36.     On August 15, 2022, CS coordinated a purchase of approximately 25.0 grams of suspected heroin from a target only known as "Rico". The controlled drug buy was completed at the direction of MERIWETHER using telephone number 414-999-6172.     MERIWETHER informed the CI that he had directed "Rico" to complete the transaction of 25.0 grams of heroin in exchange for $1,250. The transaction took place at 12419 West Hampton Avenue, Butler, Wisconsin. During the transaction, "Rico" arrived alone, operating a 2009 Dodge Avenger bearing Wisconsin registration ALT-3171, which listed to an address identified as 3122 North 21st Street, Milwaukee, Wisconsin.

37.     Prior to the transaction, MERIWETHER had provided a contact name and number for "Rico". The number was identified as 512-940-1862 and the name "Perez Efigenia" was associated with that number on the shared contact by MERIWETHER. Upon arriving at 12419

West Hampton Avenue, CS approached the Dodge Avenger in which a Hispanic male was inside and asked if he was "Rico". The unknown male stated yes, and CS entered the Dodge Avenger and completed the transaction with the male. I later weighed and tested the suspected heroin obtained from "Rico" and learned the total weight was 25.0 grams and the substance later tested positive for Fentanyl.

38.     After the transaction, law enforcement followed "Rico", still operating the same Dodge Avenger, back to the address listed for the registered owner (Shannone Brown) which was the 3122 North 21st Street, Milwaukee, Wisconsin. I was able to positively identify "Rico" as Daniel RODRIGUEZ-PEREZ utilizing open-source records and cell phone subscriber information. I obtained a Texas Photo Identification Card and after reviewing surveillance photos/video that was obtained during the transaction, confirmed that the subject who conducted the transaction was in fact Daniel RODRIGUEZ-PEREZ.

**e. Fifth Undercover Transaction with MERIWETHER and RODRIGUEZ-PEREZ Using 414-999-6172 and 512-940-1862 – August 22, 2022**

39.     On August 22, 2022, CS coordinated a purchase of approximately 25.4 grams of suspected fentanyl for $1,250 from RODRIGUEZ-PEREZ, "Rico", using telephone number 512-940-1862. The transaction was completed at the direction of MERIWETHER using telephone number 414-999-6172. MERIWETHER had contacted CS earlier on the morning and informed CS that his crew was attempting to sell off their large quantities of heroin so they could obtain a large amount of cash to post bail for an individual. Based on case agents' investigation into the ADTO, case agents determined MERIWETHER was discussing bail for FRANKLIN given the conversations and FRANKLIN's recent arrest.

40.     MERIWETHER informed CS that he was still in Indiana but stated that "Rico"

(RODRIGUEZ-PEREZ) would conduct the transaction. Later in the afternoon CS drove to the meet location of 12419 West Hampton Avenue, Butler, Wisconsin. RODRIGUEZ-PEREZ arrived in a 2009 Dodge Avenger, bearing Wisconsin Registration ALT-3171. This was the same vehicle that RODRIGUEZ-PEREZ was operating during the controlled drug buy on August 15, 2022. There was an unidentified black female who was in the front passenger seat at the time of the transaction. During the transaction RODRIGUEZ-PEREZ entered CS's vehicle and completed the transaction. I later weighed and tested the substance and obtained a total weight of 25.4 grams. The substance tested inconclusive for heroin but did test positive for fentanyl.

**f. Sixth Undercover Transaction with MERIWETHER and NICHOLS Using 414-999-6172 – August 29, 2022**

41.     On August 29, 2022, law enforcement conducted an undercover controlled buy. During the undercover controlled buy, CS, and an Undercover Law Enforcement Agent (UC) made arrangements to purchase 111.4 grams of fentanyl, one Glock auto rear switch, and a Glock .45 caliber handgun from MERIWETHER using telephone number 414-999-6172. The undercover controlled buy took place at 3716 West North Avenue, Milwaukee, Wisconsin. This location is the address of a barber shop identified "Cuttinup Crew". During the investigation into the ADTO, "Cuttinup Crew" was identified as a location where MERIWETHER is known to frequent. During the transaction, MERIWETHER entered the UC's vehicle, where CS was the front seat passenger. The original transaction was for the Glock auto rear switch, but when MERIWETHER entered the vehicle, he informed the UC that someone was bringing the "switch". During this time, MERIWETHER completed the transaction of fentanyl for $2500 with CS. The UC and MERIWETHER began discussion regarding a handgun that was on MERIWETHER's person. MERIWETHER eventually agreed to sell the handgun, which was identified as a Model 21, Glock

Page 14

.45 Caliber handgun.

42.    A short time later a subject, later identified as Brandon M. NICHOLS through social media, arrived at the location.  NICHOLS provided MERIWETHER a bag that contained the "switch" and MERIWETHER subsequently completed the transaction with the UC.  The suspected controlled substance was weighed and tested.  The substance weighed a total weight of 111.4 grams and tested positive for fentanyl.  Law enforcement with Alcohol Tabaco and Firearms (ATF) later test fired the "switch" provided by NICHOLS and MERIWETHER.  It was determined that the "switch" converted a semi-automatic firearm into a fully automatic firearm, meaning one pull of a firearm trigger caused the firearm to fire multiple bullets.

43.    Following the undercover drug and gun transaction, law enforcement reviewed social media accounts and phone records.  Based on the review of these materials law enforcement located photos of NICHOLS associated with NICHOLS' social media account.  These photos were consistent with the subject that arrived during the undercover transaction and provided MERIWETHER with the switch, which was then provided to the UC.

g.  **Seventh Undercover Transaction with MERIWETHER and NICHOLS Using 414-999-6172 – September 12, 2022**

44.    On September 12, 2022, CS and the UC arraigned for an undercover controlled drug and firearm purchase with MERIWETHER using telephone number 414-999-6172.  CS and the UC arranged with MERIWETHER to purchase 25.9 grams of fentanyl, four (4) firearms, and a Glock auto-sear switch for a total of $5,250.  The undercover buy took place at 3907 North 24th Street, Milwaukee, Wisconsin.  During the transaction, MERIWETHER entered the UC's undercover vehicle and completed a sale of four (4) firearms and a Glock auto-sear switch with the UC.  The UC purchased the following firearms and a Glock switch during the transaction in

exchange for $4,000:

       i.     NAK9 (Draco), 9 MM, Century Arms with serial number RON216548;

      ii.    RF-15, multi caliber, Radical Firearms, LLC with serial number 21-105263;

    iii.    PT111 Millennium G2, 9 mm, Taurus with serial number TKM53277; and

    iv.    Bodyguard, 38 special, Smith & Wesson with serial number CPX2831.

45.      During the same transaction, MERIWETHER completed the sale of 25.9 grams of fentanyl to CS in exchange for $1,250. The suspected controlled substance was weighed and tested. The substance weighed a total weight of 25.9 grams and tested positive for fentanyl.

46.      Prior to the transaction, law enforcement observed MERIWETHER at the rear of his vehicle with the trunk open.  This vehicle was the same vehicle MERIWETHER was operating during a previous transaction and is known to be operating at this time, the Elantra.  There was a second individual with MERIWETHER during the transaction, and this individual was identified by CS as Dontrell FRANKLIN.  MERIWETHER informed CS during the transaction that this location is where his "cousin" (FRANKLIN) resides, and MERIWETHER was heard confirming the address when asked by CS where he (MERIWETHER) was just prior to the transaction. MERIWETHER was observed by CS to be in possession of "half a brick" of heroin during the transaction.  MERIWETHER called the UC following the transaction and discussed additional firearms that FRANKLIN had for sale.

**h. Eighth Undercover Transaction with MERIWETHER using 414-999-6172 – September 22, 2022**

47.      On September 19, 2022, CS contacted MERIWETHER at phone number 414-999-6172.  MERIWETHER informed CS that he would be returning to the Eastern District of

Wisconsin and was prepared to sell heroin to CS. MERIWETHER further stated he had additional firearms, including one with a switch, and "clear" to sell to the UC. Based on my training and experience, I know "clear" to be a street term used by drug traffickers for methamphetamines MERIWETHER indicated he would be traveling back to Wisconsin either on September 20 or 21, 2022 to complete this drug and firearm buy. Based on prior conversation with MERIWETHER, he was not on good terms with WILLIAMS and had not been for several of the prior undercover controlled purchase. This was consistent with MERIWETHER no longer using WILLIAMS's Mazda during the drug buys, but instead using the Elantra or other co-conspirators' vehicles.

48. On September 22, 2022, CS and the UC were driving to meet MERIWETHER to conduct the undercover controlled drug and gun buy. CS received a call from MERIWETHER at number 414-999-6172. MERIWETHER instructed CS and the UC to meet at 3907 North 24th Street, Milwaukee, WI, FRANKLIN's residence. CS and the UC arrived at the location and parked behind MERIWETHER's Elantra. MERIWETHER was outside the Elantra, and FRANKLIN was later observed inside the front passenger seat of the Elantra. CS initially got out of the vehicle to approach MERIWETHER, but MERIWETHER directed CS to return to the vehicle. MERIWETHER and CS then returned to the UC's vehicle.

49. MERIWETHER brought with him an AR-style pistol, Freedom Ordinance, FX-9; multi caliber bearing serial number 010897 with an extended magazine, and a Glock 19X, 9mm bearing serial number BKCC540, and a Glock 21, .45 bearing serial number XNS459 with a switch attached, which converted the Glock to fully automatic, a machinegun. CS provided MERIWETHER $2500 and MERIWETHER provided CS with 50.1 grams of heroin. The UC was inspecting the firearms during this time. The UC was looking at the Glock 19X with the switch. The UC noticed the switch was different than the prior switched purchased during the

undercover controlled buy on September 12, 2022.  MERIWETHER stated the FRANKLIN got the previously switch from Texas, that FRANKLIN also has a Glock switch source in Kentucky, who uses a 3D printer. MERIWETHER discussed also selling a Taurus revolver Judge .45 shotgun to UC. The UC provided $4000 for the three firearms brought by MERIWETHER.

50.     MERIWETHER then informed the UC he had also sold all his methamphetamines. MERIWETHER then discussed a future sale of methamphetamines with the UC and also discussed FRANKLIN's prior arrest. The UC requested to purchase heroin from MERIWETHER, since he no longer had methamphetamines to sell.   MERIWETHER went back to his Elantra, where FRANKLIN was still seated and then returned to the UC's vehicle.  MERIWETHER handed the UC his hat, which continued about 6.66 grams of heroin.  The UC provided MERIETHER his hat and $300.  The UC and CS then left the area.

51.     Case agent later field tested the heroin provided to CS and the UC, which tested positive for fentanyl.

**i.  Nineth Controlled Transaction with MERIWETHER using 414-999-6172 - October 5, 2022**

52.     Beginning on September 27, 2022, to October 5, 2022, the UC communicated with MERIWETHER using telephone 414-999-6172 regarding purchasing additional firearms and controlled substances.  During this time MERIWETHER and the UC discussed purchasing a .40 caliber Glock machine gun, AR-15-style pistol with binary trigger, fully automatic AK-47 rifle and a SKS rife.  Additionally, MERIWETHER and the UC also shared iMessages regarding the purchase of methamphetamines and heroin.  MERIWETHER explained that his methamphetamine source was in Texas and that MERIWETHER need to travel to obtain more methamphetamines.

53.     On October 5, 2022, the UC and MERIWETHER, using telephone number 414-

999-6172, iMessage each other to arrange meeting for the firearms and heroin transaction. During the communication, MERIWETHER texted that he would not be able to get the UC the "K", referring to the AK-47. MERIWETHER explained his "brother" was "no where to be found".

54.     The UC met MERIWETHER at 3907 North 24th Street, Milwaukee, WI, FRANKLIN's residence to complete the undercover controlled transaction. MERIWETHER arrived at the location in the gold-colored Hyundai Elantra with Indiana (IN) License Plate "828YZ". MERIWETHER directed the UC to follow MERIWETHER to a less busy area. The UC followed MERIWETHER to 23rd and Melvina.

55.     Once at 23rd and Melvina, MERIWETHER exhibited the Elantra and obtained an AR-15 style pistol from the Elantra's rear driver seat. MERIWETHER then entered the UC's vehicle. MERIWETHER provided the AR-15-style pistol with binary trigger to the UC. MERIWETHER also retrieved a .40 caliber Glock machine gun from his front pocket hoodie and provided it to the UC. MERIWETHER subsequently demonstrated the AR-15-style pistol and Glock's ability to fire fully automatic, unload. After providing the firearms to the UC, MERIWETHER instructed the UC to follow him to the Elantra.

56.     MERIWETHER entered the driver's seat of the Elantra, and the UC entered front passenger seat. Once inside the Elantra, MERIWETHER obtained a bag of suspected heroin. I did review a photo of the suspect heroin captured on the UC's recording device. Based on my training and experience, the baggie appeared to contain approximately four ounces of suspected heroin in total. MERIWETHER then broke a small piece from the suspected heroin and place it on a scale the UC brought with to the Elantra. The scale indicated the suspected heroin was 15 grams.

57.     MERIWETHER and the UC discussed the AR-15 and a holding fee. The UC then

Page 19

provided MERIWETHER with $5300 for the firearms, suspected heroin, and holding fee for the AR-15. MERIWETHER and the UC then discussed a future sale of methamphetamines. The UC then left MERIWETHER in the Elantra and drove away in the UC's vehicle.

58.    Case agent later field tested the heroin which tested positive for fentanyl.

59.    The UC purchased 15 grams of fentanyl and the following firearms from MERIWETHER during the October 5, 2022, undercover controlled buy:

> i.  40 Caliber Glock, model 22 with serial number BVK7876, machine gun; and
> ii. Multi Caliber Franklin Armory, model pistol with serial number P-17412.

**j.  Tenth Controlled Transaction with MERIWETHER using 414-999-6172 - October 13, 2022**

60.    On October 13, 2022, CS arranged a controlled buy of heroin with MERIWETHER using telephone number 414-999-6172. It was determined CS would be purchasing 50 grams of heroin from MERIWETHER for $2,500.00. CS met with MERIWETHER at 12621 West North Avenue, Brookfield, Wisconsin. MERIWETHER arrived as the driver of a previously identified Hyundai Elantra bearing Indiana registration 828-YZ. A front seat passenger was observed by surveillance units. Through photographs taken, case agents were able to identify the passenger as RODRIGUEZ PEREZ, also known as "Rico". MERIWETHER entered CS's vehicle at which time CS provided MERIWETHER with $2,500.00. MERIWETHER subsequently provided CS with 50.7 grams of a heroin.

61.    During the transaction CS spoke with MERIWETHER regarding the purchase of additional heroin on a later date. There was a discussion between MERIWETHER and CS about purchasing kilograms of heroin from a source in Texas. During this conversation MERIWETHER

stated that the "Mexican" has a source in Texas. MERIWETHER confirmed the "Mexican" was RODRIGUEZ PEREZ.

62.     Case agent later field tested the heroin which tested positive for fentanyl.

63.     Following the controlled drug transaction, case agents follow MERIWETHER to a Citgo Gas Station located at 3708 West North Avenue, Milwaukee, WI. MERIWETHER met with several individuals. Case agents observed a gun in the waistband of MERIWETHER during this time. After a few minutes, MERIWETHER and several other unidentified individuals walked around the corner of the building and entered the "Cuttinup Crew" Barber shop located at 3716 West North Avenue. MERIWETHER remained in the business as members of the surveillance team terminated their surveillance.

**k. Eleventh Undercover Transaction with MERIWETHER using 414-999-6172 and Identification of FRANKLIN's number 414-416-0868 - October 19, 2022**

64.     On October 19, 2022, CS and the UC arranged a controlled buy of controlled substances and firearms with MERIWETHER using telephone number 414-999-6172.

65.     The UC communicated with MERIWETHER using iMessages, voice phone calls and FaceTime. Prior to meeting, the UC discussed with MERIWETHER obtaining three Glock auto-sears, machineguns. MERWIETHER texted the UC "I'm Pissed." MERIWETHER then shared a screenshot of an Instagram direct message conversation between MERIWETHER and MERIWETHER's Glock auto sear source (Figure 1).

Page 21



(Figure 1)

66.     Based on my training and experience, the Instagram message appeared to be consistent with MERIWETHER's Glock source no longer having access to the Glock auto sears. It appeared, based on the communication that MERIWETHER's Glock auto-sear source was involved in a high-speed pursuit with law enforcement, and during the course of that pursuit, the individual had thrown the Glock auto sears form their vehicle. The UC still agreed to meet with MERIWETHER to purchase the other firearms and controlled substances.

67.     CS and the UC met in front of FRANKLIN's residence, 3907 North 24th Street, Milwaukee, WI.  This was the same location where the September 12, 2022, and September 22, 2022, undercover controlled substances and firearms transactions occurred.  After CS and the UC arrived, MERIWETHER entered the UC's vehicle.  MERIWETHER provided CS with 137.6 grams of methamphetamine for $1,750.00.  MERIWETHER also provided the UC two firearms for $2,800.00.  The firearms were described as:

> i. a Taurus pistol, model PT92, 9MM caliber, with serial number ADD252348; and
>
> ii. a ROMARM Rifle, Model WASR-10, with serial number A1-1827-13.

68.     Prior to the transaction, MERIWETHER was observed exiting a Black Jeep Compass carrying the ROMARM Rifle. The Black Jeep Compass appeared to be the same Black Jeep Compass that BROWN and FRANKLIN we stopped in by law enforcement on August 2, 2022. The Black Jeep Compass does not have a displayed registration but has a rear red dealer license plate and matted black rims. Based on the investigation, it is believed that this is the vehicle owned by BROWN. Later, UC was shown a photo of the Black Jeep Compass BROWN and FRANKLIN were arrested in on August 2, 2022. UC confirmed this was the vehicle MERIWETHER exited during the October 19, 2022, controlled buy.

69.     During the transaction MERIWETHER asserted the rifle was capable of firing in an automatic fashion but when the UC disagreed, MERIWETHER placed a call. Case agents later reviewed call detail records from MERIWETHER's telephone 414-999-6172 and determined MERIWETHER called telephone 414-416-0868. MERIWETHER's call to 414-416-0868 lasted approximately four minutes and forty-three seconds. The call was placed on speakerphone which was recorded by the recording equipment issued to CS and the UC. The voice of the person using 414-416-0868 on the call was consistent to a later jail call on October 3, 2022, reviewed by case agents between inmate Montrell HILSON at Kettle Moraine Correctional Institution and 414-416-0868. This record jail call will be discussed later in this affidavit, but case agents determined the caller of 414-416-0868 to be FRANKLIN given the content of the jail call.

70.     During the call between Meriwether, the UC, and 414-416-0868, there was discussion about the rifle and eventually FRANKLIN on telephone number 414-416-0868 agreed

Page 23

to lower the price of the rifle.  Also, during the transaction, MERIWETHER discussed setting up a meeting between his supplier for methamphetamine and the UC.

### l.   Twelfth Undercover Transaction with MERIWETHER using 414-999-6172 - October 27, 2022

71.     Following the transaction on October 19, 2022, the UC arranged a to purchase controlled substance and firearms with MERIWETHER using telephone number 414-999-6172. On October 27, 2022, the UC conducted a controlled transaction with MERIWETHER. The transaction took place in the parking lot of Mayfair Mall located at 2500 North Mayfair Road, Wauwatosa, WI.  During the transaction, MERIWETHER arrived operating a Black Chevrolet Malibu with Texas registration MZS-1839, which was later determined to be a rental vehicle, rented out of Evansville, Indiana.  FRANKLIN was also with MERIWETHER in the front seat passenger.  During the transaction, the UC purchased 110.1 grams of methamphetamine in exchange for $1,380.00 and three handguns all equipped with Glock auto-sear switches, making them capable of firing in an automatic fashion.  The all the firearms contained magazines loaded with ammunition.  The UC purchased the following items from MERIWETHER:

> i.   40 caliber Glock, model 22; with serial number WHX146;
> ii.  9 mm Glock, model 17 with serial number BTVX769; and
> iii. 9 mm Glock, model 17 with serial number BVBN256.

72.     During the transaction, MERIWETHER discussed purchasing and selling larger quantities of illegal narcotics with the UC and indicated that MERIWETHER's "cousin" has a source for narcotics.  MERIWETHER stated that he and his "cousin" would be splitting the profits from the sale of the handguns.   MERIWETHER then discussed the fact that he had bailed his "cousin" out of jail for $20,000 and was still waiting to be paid back.  Based on the investigation in this ADTO, case agents know that FRANKLIN was arrested on August 2, 2022, and later bailed

out on August 26, 2022. Case agent later determined Shannone Brown posted bail for FRANKLIN, which is further described below. Also, MERIWETHER confirmed "cousin" was the front seat passenger in the Malibu, who was identified as FRANKLIN.

73.     MERIWETHER then informed UC that he had just "gotten rid of" five pounds of methamphetamine and would be able to get him two pounds by next week. MERIWETHER stated that "it's really my cousin" that gets "the pounds". At that point MERIWETHER exited UC's vehicle and entered the Malibu and left the area.

74.     Following the controlled buy, MERIWETHER and FRANKLIN were followed from Mayfair Mall to the Cuttinup Crew barber shop located at 3716 West North Avenue, Milwaukee, WI. There they met up with several other individuals yet to be identified.

**m. Thirteenth Undercover Transaction with MERIWETHER using 414-999-6172 – November 4, 2022**

75.     On November 1, 2022, CS contacted MERIWETHER using 414-999-6172 to arrange another undercover controlled purchase of controlled substances and firearms, which was previously discussed during the controlled drug transaction on October 13, 2022.

76.     CS and MERIWETHER had agreed to conduct the transaction on November 4, 2022. CS and MERIWETHER discussed the purchase of 25 grams of heroin from MERIWETHER. In addition, MERIWETHER and CS discussed that on November 4, 2022, CS would provide MERIWETHER with $5,000.00. MERIWETHER would then travel to Texas with "the Mexican", RODRIGUEZ-PEREZ, or MERIWETHER will meet with a source known by FRANKLIN that has connections in Texas where the ADTO can purchase kilograms of heroin.

77.     Besides the statements made to CS by MERIWETHER during the controlled drug transaction on October 13, 2022, court authorized electronic surveillance has placed

Page 25

RODRIGUEZ-PEREZ's telephone number 512-940-1862 in Texas previously. Consistent with RODRIGUEZ-PEREZ being "the Mexican" that travels to Texas. Further, RODRIGUEZ-PEREZ is the only known Hispanic member of the ADTO.

78. MERIWETHER explained to CS that CS will be purchasing a quarter kilogram for the $5,000.00. MERIWETHER stated that by the time the ADTO "cut it with fentanyl" upon returning to Wisconsin, CS will receive a kilogram of heroin/fentanyl. MERIWETHER referenced RODRIGUEZ-PEREZ and FRANKLIN as individuals known to be involved with the planned purchasing of kilograms of heroin.

79. On November 4, 2022, at 11:30 am, MERIWETHER and CS meet at 12621 West North Avenue, Brookfield, WI. MERIWETHER sold 26.2 grams of fentanyl to CS in exchange for $1,250.00. During the transaction, MERIWETHER arrived operating the same Black Chevrolet Malibu with Texas registration MZS-1739 that was involved in the transaction that took placed on October 27, 2022. MERIWETHER parked next to the CS and rolled the front driver's window down. MERIWETHER was suspicious of vehicles in the parking lot and proceeded to throw a bag containing the fentanyl through his window and into CS's vehicle after CS had rolled down the front passenger window. CS then reached through the opened windows and handed $1,250.00 to MERIWETHER. MERIWETHER then exited the lot and left the area. Given circumstances involving the investigation into the DTO, CS pushed off providing MERIWETHER with CS's share of $5000 for the kilogram of heroin deal.

80. The CS stated that he/she did in fact complete the transaction with MERIWETHER and identified a front seat passenger as Savanna WILLIAMS. The CS also indicated that there was a young child in the rear seat of the vehicle. After reviewing photographs and video obtained during the transaction, I was able to positively identify MERIWETHER but was unable to confirm

Page 26

through the photos and video that WILLIAMS was the front seat passenger. The CS is familiar with WILLIAMS and has conducted transactions with her in the past, therefore I have no reason to believe he/she was incorrect in their identification of WILLIAMS.

**n. Fourteenth Undercover Transaction with MERIWETHER using 414-999-6172 – November 16, 2022**

81.    Prior to the controlled buy on November 16, 2022, MERIWETHER using 414-999-6172 agreed with the UC and CS to purchase a kilogram of heroin together. MERIWTHER would be supplied $5,000.00 by the UC and CS. MERIWTHER then would travel to either Texas or Tennessee based on supply and would obtain a "kilo" of heroin" MERIWETHER indicated that he would return to Wisconsin with the "kilo" and would "cut it up" with "lactose and fentanyl" and would return a significantly large portion, possibly up to a "kilo" of heroin/fentanyl mixture to the UC and CS after it was "cut up" by MERIWETHER.

82.    On November 16, 2022, MERIWETHER used 414-999-6172 to contact UC regarding purchasing firearms. CS also contacted MERIWETHER at 414-999-6172 regarding meeting. MERIWETHER later met CS and the UC at North 55th and West Keefe Avenue, Milwaukee, WI. MERIWETHER exited a Black Chevrolet Equinox with Kansas registration R008676. MERIWETHER approached the UC's vehicle and entered via the rear driver's side door. MERIWETHER had a large black duffle style bag with him and completed the transactions with the UC and CS. MERIWETHER provided 27.6 grams of fentanyl to CS. CS provided MERIWETHER with $5,000.00 to cover the purchase of the 27.6 grams of fentanyl and as a buy in to a "brick of heroin". MERIWETHER provided the UC with a firearm, later identified as an AM-15, Anderson Manufacturing Pistol with serial number 22019470. UC provided $1500 to MERIWETHER in exchange for the AM-15.

Page 27

83.     During the transaction, MERIWETHER stated that he was planning on leaving for Texas in the next few days to obtain the "bricks" of heroin.  MERIWETHER then asked the UC and CS if they still wanted MERIWETHER to mix it up, which based on MERIWETHER's previously statement and my training and experience meant MERIWETHER would cut the heroin and mix it with lactose and fentanyl.  After completion of the transaction, MERIWETHER exited the UC's vehicle and entered the Equinox and remained in the area for a short period of time.

84.     MERIWETHER drove to a location identified by case agents as 3506 or 3508 North 50th Street, Milwaukee, WI, which is an upper/lower duplex.  An unidentified front seat passenger exited the Equinox and was observed entering the side of either 3506 or 3508 North 50th Street. The unidentified male was in possession of the black bag that MERIWETHER had been in possession of during the controlled buy.  MERIWETHER then left the area and was followed to the Cuttinup Crew barber shop at 3716 West North Avenue, Milwaukee, WI and 1401 West Center Street, Milwaukee, WI.  Surveillance was then terminated as MERIWETHER left the Center Street address.

85.     Following this transaction, case agents reviewed court authorized electric surveillance of MERIWETHER's telephone 414-999-6172.  On November 17, 2022, the day following the controlled buy with the UC and CS, MERIWETHER was observed leaving the Milwaukee area and traveling to Indiana.  MERIWETHER remained in the Indiana area until November 21, 2022, when he returned to Milwaukee.

86.     On November 21, 2022, at approximately 5:00 pm case agents observed the Black Chevrolet Equinox MERIWETHER used during the controlled buy on November 16, 2022, parked in front of the 414 Exclusive Clothing Store, located at 5740 West Fond Du Lac Avenue, Milwaukee, WI.  During this time, MERIWETHER and FRANKLIN were both observed inside

Page 28

of the store and photographs of both were obtained. MERIWETEHR and FRANKLIN were observed exiting the store and entering the Equinox and leaving the area. Surveillance was then terminated.

87. On the morning of November 22, 2022, members of the surveillance team were conducting surveillance at the Diamond Inn Hotel, located at 6222 West Fond Du Lac Avenue, Milwaukee, WI. CS previously informed case agents that the ADTO would rent "high class" hotels to cut and package the ADTO's illegal narcotics. Case agents later confirmed through Landmark Credit Union records belonging to Savanna WILLIAMS, that the ADTO would rent hotels. WILLIAMS Landmark Credit Union records showed multiple charges related to individual hotels and hotels.com website.

88. On November 22, 2022, case agents observed a Black Jeep Compass, similar to BROWN's and FRANKLIN's, enter the parking area underneath the hotel. At 7:00 a.m. I observed BROWN's and FRANKLIN's Black Jeep Compass traveling westbound on West Fond Du Lac Avenue before turning into the parking area. I recognized this vehicle to match the one used during the previous transaction and the one I had viewed in pictures obtained from the USMTF. The vehicle left the area around 8:00 a.m. and surveillance was then terminated. Based on my training, experience, and investigation into this ADTO, the conduct described above between November 21, 2022, and November 22, 2022, is consistent with MERIWETHER traveling to obtain larger amounts of controlled substances and then being the controlled substances back to Milwaukee, so the DTO could "cut" the drugs with other substances.

89. In the afternoon of November 22, 2022, MERIWETHER departed the Milwaukee area again and traveled to the Indiana area, where he remained until returning to the Milwaukee area on the early morning hours of November 24, 2022. MERIWETHER remained in the

Milwaukee area until November 27, 2022, when he left the area and began traveling south/west until he arrived in the Houston, Texas area on the morning of November 28, 2022. Case agents also observed the court authorized electronic surveillance for FRANKLIN's telephone 414-416-0868 left the Milwaukee area at this same time and traveled to Houston, Texas arriving on November 28, 2022. This movement was consistent with MERIWETHER and FRANKLIN traveling together to obtain controlled substances.

90. Case agents continued to review electronic surveillance of MERIWETHER's telephone 414-999-6172 and FRANKLIN's telephone 414-416-0868. On November 27, 2022, at approximately 3:00 p.m. MERIWETHER began traveling south from Indiana and eventually traveling to the Houston, Texas area where he arrived at approximately 10:00 a.m. on November 28, 2022. MERIWETHER remained in the area of Jersey Village, TX for several hours according, before traveling north before arriving in the Evansville, IN area at approximately 10:30 a.m. on November 29, 2022. FRANKLIN's travel was also similar to MERIWETHER's during this time frame.

91. While reviewing the public Instagram account for MERIWETHER, identified as "thereal_chefdon92", MERIWETHER posted several videos on the account on November 28, 2022, which were later learned to be deleted after the 24-hour period elapsed. The first video appeared to have been taken from inside a vehicle. The video had a highway sign, which stated "DALLAS". The camera then panned to the pants pocket of the person taking the video. The pocket is opened and a large amount of what appears to be US Currency is observed inside the pocket. The next video is also taken from inside a vehicle, and it appears the vehicle is stationary, in a parking lot. The camera panned to trees, where several vehicles parked is also seen. All of the vehicles have Texas license plates affixed to them. The next video was taken from what

Page 30

appears to be an angle outside of the vehicle. The camera panned and showed a box which was opened. The box appeared to have several capped bottles inside. The caption stated, "You boys know what time it is no deals on these navy seals either". There also appeared to be at least four unopened boxes in the video which match the opened box.

   o. **Fifteenth Undercover Transaction with MERIWETHER using 414-999-6172 – December 16, 2022**

   92.    On December 6, 2022, MERIWETHER using 414-999-6172 reached out to the ATF UC directly and agreed to complete the transaction which initially took place on November 16, 2022. MERIWETHER had informed the UC and CS that he was going to travel to Texas or Tennessee to pick up multiple "kilos of heroin". MERIWETHER provided an address to the UC of 5146 North 60th Street, Milwaukee, WI to meet. The UC and CS subsequently traveled to that location and arrived at 3:21 p.m. The UC identified two vehicles in the driveway of 5146 North 60th Street. A Black Chevy Equinox with Kansas license plate R008676. This is a rental vehicle known to be operated by MERIWETHER, including during the transaction on November 16, 2022. The second vehicle was a Silver/Gray Hyundai Sonata with Wisconsin license plate AFJ-7505.

   93.    The UC and CS entered 5146 North 60th Street and met with MERIWETHER who was allegedly alone. MERIWETHER informed the UC that 5146 North 60th Street belonged to his "grandmother" and escorted the UC and CS to the kitchen where the transactions were completed. MERIWETHER then turned over a plastic bag containing a white/tan powder/solid substance which was later weighed and tested. A total weight of 233.4 grams was obtained and the substance tested positive for both heroin and fentanyl. The UC then purchased two firearms that were also loaded with ammunition:

          i.    Anderson AM-15, with serial number 19335796; and

ii.	Glock 45 9 mm, with serial number BUFB412 with a Glock auto-sear switch installed.

94.	MERIWETHER informed CS and the UC that he intended on traveling back to the Houston, TX area "next weekend". MERIWETHER talked about how the Houston heroin source "was really my cousin's people". The cousin MERIWETHER is referring to is believed to be FRANKLIN, based on prior references by MERIWETHER identifying "cousin" as FRANKLIN.

95.	MERIWETHER then discussed issues that he had with the rental vehicle, the Equinox, and having to pay extra because the vehicle had been utilized in Texas. MERIWETHER then informed CS that he intended to go back to Texas to obtain "Tar", referring to black tar heroin. MERIWETHER stated "I gotta get some tar, that white shit that shit good, but that tar shit, that's…that's the everybody use fent (referring to fentanyl) but tar is real heroin. Everybody gonna like it because its fent and its cooler but when they… when I see people do mixed tar heroin with fent that the best shit ever. I know for a fact".

96.	MERIWETHER then informed the UC and CS that he "stretched out" the heroin, meaning he mixed the original amount he purchased. MERIWTHER then stated that he purchased 100 grams of raw heroin, then mixed it with unidentified substances and increased it to 240 grams. The UC and CS observed blender cups covered in a white powdery substance, and parts belonging to a kilogram heroin/fentanyl press. MERIWETHER then explained that he had stayed up all night mixing the heroin that was provided to the CS and UC. MERIWETHER stated that he had purchased 300 grams of fentanyl from the Houston source when he was in Houston and that he was charged $20,000.00 for a kilogram of heroin. MERIWETHER also informed CS and the UC that he had pints of "promethazine" for "$70.00 a pint". This would be consistent with what was observed on MERIWETEHR's Instagram account, as described earlier.

Page 32

97.     Following the December 6, 2022, transaction, case agents reviewed court authorized electronic surveillance.  On December 7, 2022, MERIWETHER's telephone 414-999-6172 returned to the Evansville, IN area.  MERIWETHER remained in the Evansville, IN area until the evening of December 10, 2022, when cellular phone records showed MERIWETHER traveling southwest and eventually leading to the Houston, TX area.

98.     Court authorized electronic surveillance for FRANKLIN's telephone 414-416-0868 indicated that FRANKLIN was also present with MERIWETHER.  During the investigation it is believed that FRANKLIN is the individual who has sources of large quantities of illegal narcotics.  As noted below, FRANKLIN has a connection to Devan OWENS, who had numerous contacts.  Further, based on the court authorized electronic surveillance between November 27, 2022, to November 29, 2022, it appeared FRANKLIN and MERIWTHER met with OWENS during their November trip to the Houston, TX.

99.     Early morning on December 11, 2022, MERIWETHER and FRANKLIN arrived in the Houston. Case agents observed several contacts with OWENS' telephone **713-281-2632** and 414-254-8676, which has been identified as number utilized by multiple individuals in the MERIWETHER DTO and is described in more detail below.  Case agents believe FRANKLIN is currently using 414-254-8676, based on the call detail records.  Between December 9, 2022, and December 12, 2022, there were a total of 24 contacts between 414-254-8676 and OWENS' telephone **713-281-2632**.

100.     On December 11, 2022, MERIWETHER and FRANKLIN traveled to the Houston, TX area.  During this time, MERIWETHER posted on his Instagram several times.

101.     On December 11, 2022, MERIWETHER posted "Houston where's the za".  Based on my training and experience, I know "za" is a reference to the marijuana.  Also on December

Page 33

11, 2022, MERIWETEHR posted a video showing the monitor screen on the dashboard of his vehicle which showed a GPS location. The indicator, which was a blue dot, showed a location in Houston. The screen then panned over to the right side of the operator of the vehicle and there was a handgun with a tan extended magazine visible. The screen then panned over to the center console area where there were several stacks of US Currency on top of the console. This video and the electronic surveillance were consistent with MERIWETHER's statements made to CS and the UC on December 6, 2022, that he was returning to Texas to pick up black tar heroin.

102.    In the late evening hours of December 11, 2022, electronic surveillance of MERIWETHER'S telephone 414-999-6172  indicated he had departed the Houston, TX area and was traveling in a Northeast direction. MERIWETHER continued to travel in that direction, eventually stopping in the Evansville, IN area in the early morning hours of December 12, 2022. MERIWETHER remained in the Indiana area, traveling to multiple locations before heading north late in the afternoon of December 12, 2022. Based on the electronic surveillance, case agents believed that MERIWETHER was traveling to Wisconsin.

103.    Case agents reviewed the earlier mentioned Instagram videos, and it appeared the interior portion of the vehicle was not consistent with a Chevy Equinox previously used by MERIWETHER. Case agents called Enterprise Security and learned that the Chevy Equinox, Kansas license plate R008676 had been returned to Enterprise. Enterprise provided information that the same individual, identified as Sirperriyawn A. HAILEY-HURTZ (DOB XX/XX/1999), who had rented the Equinox and other rental vehicles operated by MERIWETHER, had rented a new vehicle on December 9, 2022. The new vehicle was identified as a 2023 Toyota Highlander with Florida license plate GVZU44, VIN 5TDGZRAHXMS516494 (Highlander).

Page 34

104.     Case agents conducted surveillance in an attempt to locate MERIWETHER as he returned to Wisconsin.  On December 12, 2022, at approximately 9:20 pm case agents observed the Highlander traveling over 100 mph northbound on I-94 in the area of Hwy 20 in Kenosha County.  Case agents attempted to follow the Highlander as it traveled at a high rate and weaved in and out of traffic.  The Highlander exited on Holt Avenue, Milwaukee, WI, where case agents lost the observation of the Highlander.

105.     Case agents continued to monitor the court authorized electronic surveillance of MERIWETHER's telephone 414-999-6172.  Case agents observed that MERIWETHER had traveled north, possibly along 6th Street in Milwaukee.  Case agents had set up a surveillance team at the residence located at 5146 North 60th Street, Milwaukee, WI, where the December 6, 2022, transaction took place.  At approximately 10:00 pm case agents observed the Highlander pull into the driveway of 5146 North 60th Street.  Case agents observed MERIWETHER exit the driver's seat.  MERIWETHER had multiple bags which he then gave to an unknown black male who was standing on a porch located on the east side of the residence.  The two communicated for a short period of time.  MERIWETHER got back into the Highlander and left the area.

106.     The Highlander then traveled to a Clarke gas station located at 6028 West Fond Du Lac Avenue, Milwaukee, WI at 10:13 pm.  The Highlander then exited the lot and traveled to the Diamond Inn Motel located at 6222 West Fond Du Lac Avenue.  The Highlander pulled over in front of the motel and FRANKLIN and black female exited.  FRANKLIN and the black female retrieved multiple backpacks and entered the motel lobby.  They used the stairs to go to the second floor before case agents lost sight of them.  MERIWETHER remained inside the Highlander, until a short time later when he began traveling northbound on Fond Du Lac Avenue until he turned onto Armitage Road and parked the Highlander.  MERIWETHER was observed by investigators

Page 35

exiting the Highlander and retrieving a bag from the rear of the Highlander. MERIWETHER then entered the driver's seat and departing the area in the Highlander. Case agents continued following MERIWETHER until they lost sight of him in the area of North 44th Street and Ridge Road.

107. At 10:35 p.m. on December 12, 2022, case agents observed the Highlander return to 5146 North 60th Street. The Highlander was parked in the driveway, and MERIWETHER was observed exiting the Highlander and entering the residence. A short time later a silver Ford Escape with Wisconsin license plate 750-AZH pulled into the driveway and an unidentified black male met with MERIWETHER. At 10:45 pm, unknown male entered the Escape and left the residence. Case agents conducted surveillance on the unknown male in an attempt to identify him without success. Case agents later determined that the vehicle registration was no longer valid and was not associated with any vehicle currently.

108. On December 15, 2022, case agents received court ordered authorization to place a GPS device on the Highlander being operated by MERIWETHER. Prior to the device being placed on the Highlander, MERIWETHER left the Milwaukee area and traveled to the Evansville, IN area on the evening of December 15, 2022. Case agents monitored MERIWETHER via previous court authorization electronic surveillance. On December 18, 2022, case agents learned that MERIWETHER was traveling back to the Wisconsin area and conducted surveillance at the 5146 North 60th Street residence. At 2:15pm case agents observed an unknown black male and an unknown black female walk up to the residence and entered the residence. At 2:30pm case agents observed the Highlander pull up the residence and park in the driveway. Case agents observed MERIWETHER exit the Highlander and removed multiple bags from the Highlander and took them into the residence. Case agents observe MERIWETHER exit the residence a short time later. MERIWETHER then got back into the Highlander and left the area. Case agents observed an

Page 36

unknown black male in the front passenger seat of the Highlander, who remained in the Highlander during this time.  MERIWETHER was followed to multiple locations, America's Best Wings located at 4119 North 56th Street, Disc Man Tobacco Shop located at 4919 West Capitol Driver, and the Economy Inn located at 7284 West Appleton Ave before surveillance was terminated.

109.    On the morning of December 19, 2022, case agents conducted further surveillance and located the Highlander at the 5146 North 60th Street residence.  Case agents identified that there were two additional vehicles at the residence along with the Highlander.  Case agents placed the GPS locator device on the Highlander which was parked at the end of the driveway at the 5146 North 60th Street.  Case agents have continued monitoring the Highlander since the placement of the device.

**p.  Sixteenth Undercover Transaction with KING and FRANKLIN using 414-254-8676 and (414) 275-6780 – January 19, 2023**

110.    On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement. Following MERIWETHER's arrest, CS and UC arranged a controlled buy with FRANKLIN and Laron N. KING. Additional details on MERIWETHER's arrest, the identification of KING and the circumstances leading to the undercover controlled buy on January 17, 2023, are described in Section II (M).

111.    On January 17, 2023, CS contacted FRANKLIN's telephone 414-254-8676 to discuss an anticipated transaction where CS and the UC intended on purchasing 50 grams of suspected heroin from FRANKLIN and possibly a firearm.  CS and the UC were also going to meet with KING either during the transaction with FRANKLIN or directly after the transaction with FRANKLIN, to purchase one or two Glock auto-sear switch devices from KING.

Page 37

112. During the conversation FRANKLIN informed CS that he was still in Texas picking up the "tar". Based on my training, experience, and investigation into the ADTO, I am aware that FRANKLIN and MERIWETHER are known to use black tar heroin to mix with fentanyl.

113. Case agents were monitoring recorded jail calls/texts that MERIWETHER was making from the Vermillion County Jail. MERIWETHER was in contact with FRANKLIN and BROWN. MERIWETHER was in contact with FRANKLIN, calling FRANKLIN's telephone 414-254-8676. MERIWETHER was contacting BROWN by calling BROWN's telephone number 414-484-6089. During these conversations BROWN and FRANKLIN alluded to being on a trip to Houston. On January 16, 2023, at 12:13 p.m. BROWN's telephone 414-484-6089 sent MERIWETHER a text message stating "We in Houston in 2 hours." Case agent were also monitoring court authorized electronic surveillance of FRANKLIN's telephone 414-254-8676 and observed that 414-254-8676 was in the Texas area. Case agents also observed publicly viewable Facebook "Stories", which are short videos people can post on their Facebook account, posted by BROWN on her Facebook account during this same time. In the videos BROWN puts captions consistent with her being in Houston, TX. Also, in the videos a Jeep emblem is observed on the steering column which is consistent with the information that FRANKLIN is known to operate the black Jeep registered to BROWN. Case agent also reviewed law enforcement camera systems and found that BROWN's Jeep with Wisconsin license plate ARL-7820 was observed on January 16, 2023, in the Houston area.

114. On January 18, 2023, at 1:32 p.m. FRANKLIN using 414-254-8676 sent CS a message stating "Lmk when utyrna meet bro I'm back". CS and case agents understood this to mean FRANKLIN was back in the Milwaukee area and was ready to complete the transaction with

Page 38

CS. CS and FRANKLIN then agreed to meet at noon on January 19, 2023. Later in the evening of January 18, 2023, at 9:19 p.m. FRANKLIN's telephone 414-254-8676 sent a text message to CS, "I got Glock 19 without a switch for a g" and immediately sent another message "In was u gone get some ice cream." Based on my training, experience, and investigation into the ADTO, I determined these messages indicated that FRANKLIN was selling a Glock 19 firearm for one thousand dollars and asked CS if he/she had intended on purchase any methamphetamine (ice cream) during a previously planned transaction that was set to take place on January 19, 2023. CS responded that he/she and UC would purchase the firearm but would not be purchasing the methamphetamine until a later date. FRANKLIN responded to CS "The Mac to right." Based on my training, experience, and investigation into this ADTO, FRANKLIN appeared to be making a reference towards a firearm. CS replied that FRANKLIN was correct. FRANKLIN responded, "Ok bet it might be 2 Glock imlyk." Based on my training, experience, and investigation into this ADTO, I determined FRANKLIN was unsure if he would one or two Glock firearms and would let CS know at a later time.

115. On January 18, 2023, at 2:30 p.m. case agents were conducting surveillance and observed BROWN operating her black Jeep with Wisconsin license plate ARL-7820. FRANKLIN was in the front passenger seat of the Jeep. The Jeep was coming northbound on I-94 from the Illinois area. Case agents followed the Jeep to multiple locations in the area, including, Ascension Columbia St. Mary's Hospital located at 2301 North Lake Drive, Milwaukee, Wisconsin, a Home Depot located at 4155 North Port Washington Road, Milwaukee, WI, and a residence located at 6677 West. Marion Street, Milwaukee, Wisconsin. At the residence of 6677 West. Marion Street, Milwaukee, Wisconsin, case agents observed an unknown black male exit the residence and enter the Jeep.

116.    On January 19, 2023, at 10:16 a.m., CS received a text message from FRANKLIN's telephone 414-254-8676.  FRANKLIN stated that he would complete the transaction in front his "house."  FRANKLIN provided an address of 3907 North 24th Street, Milwaukee, Wisconsin. 3907 North 24th Street, Milwaukee, Wisconsin is where multiple controlled transactions have taken place during this investigation, and a residence known to be occupied and associated to BROWN and FRANKLIN.

117.    At 12:00 p.m. on January 19, 2023, case agents were conducting surveillance on CS and the UC during the undercover controlled buy.  CS and the UC were inside of a vehicle parked in front of 3907 North 24th Street, Milwaukee, WI. At 12:07 p.m. case agents observed FRANKLIN operating the black Jeep with Wisconsin license plate ARL-7820. At 12:12 p.m. the Jeep pulled up next to the UC's vehicle and directed the UC to the area of 23rd and Melvina. Case agents were aware that due to an unrelated call there were several Milwaukee Police Department marked squads patrolling the area, with one squad passing FRANKLIN and the UC's vehicle while FRANKLIN discussed the new location to meet.

118.    After parking in the new location, FRANKLIN exited the Jeep and entered the rear door of the UC's vehicle. FRANKLIN completed the transaction for heroin with CS and the transaction for the firearm with the UC. During this conversation, FRANKLIN indicated that he had additional firearms to sell to the UC,  but that he needed to get keys to his storage unit. FRANKLIN also discussed the fact that CS and the UC were going to meet with KING to purchase a Glock auto-sear switch device.  FRANKLIN indicated that he was also going to purchase a switch device from KING at some point. FRANKLIN exited the vehicle and entered the Jeep. FRANKLIN then remained inside of the Jeep at that location for several minutes.

119. After completing the transaction with FRANKLIN, CS and the UC went to the next target location, the barbershop at 3716 West North Avenue, Milwaukee, WI. Upon arrival the UC parked in front of the barbershop at 12:39 p.m. At 12:49 p.m. FRANKLIN arrived at the barbershop in the Jeep and parked behind UC. FRANKLIN exited the Jeep and walked up to the UC's vehicle approaching the front passenger side and spoke with CS and the UC through the front passenger window for a brief period time before returning to the Jeep.

120. At 1:02 p.m. KING was observed walking up to FRANKLIN in the Jeep. KING and FRANKLIN met briefly. KING then walked towards and entered the UC's vehicle via the rear passenger door. KING provide the UC with one firearm with a Glock Auto-Sear Switch device in exchange for cash. KING then provided his phone number of (414) 275-6780 to the UC. Prior to this meeting, case agents identified (414) 275-6780 as a number for KING. At 1:05 p.m. KING exited the vehicle and entered the barbershop.

121. Case agents did test and weigh the suspected heroin that was purchased from FRANKLIN and obtained a positive result for fentanyl and a total weight of 51.6 grams.

## C. BACKGROUND INVESTIGATION OF ADTO MEMBERS

122. As part of the investigation into the ADTO, law enforcement reviewed ADTO members' public social media accounts, reviewed jail calls, conducted surveillance and reviewed call detail records. Based on the controlled and undercover controlled buys of drugs and firearms and review of the other materials obtained from investigators, law enforcement was able to verify and identify other members of the ADTO and well as ADTO's telephone numbers.

123. I obtained detailed cellular phone records for telephone numbers of MERIWETHER, 414-999-6172, FRANKLIN's old number, 414-412-6719, FRANKLIN's number, 414-416-0868, and RODRIGUEZ-PEREZ, 512-940-1862. While reviewing the records,

I documented that there were hundreds of contacts between all three numbers, with the majority of the contacts between FRANKLIN's old number and RODRIGUEZ-PEREZ, 512-940-1862. While reviewing contacts between the calls, another number identified as 414-426-0464 was identified as a number of interests. There was a total for 235 contacts between 414-426-0464 and RODRIGUEZ-PEREZ (512-940-1862) from June 28, 2022, to August 28, 2022. Between June 25, 2022, and July 17, 2022, there were 254 contacts between 414-426-0464 and FRANKLIN's old number 414 412-6719.

124. Law enforcement reviewed FRANKLIN's jail calls while he was in custody at the Milwaukee County Jail. FRANKLIN made several calls to 414-426-0464 and spoke with a male who was believed to be RODRIGUEZ-PEREZ based on comparisons of the caller's voice and the voice of RODRIGUEZ-PEREZ during the controlled drug buys. One jail call between FRANKLIN and RODRIGUEZ-PEREZ, 414-426-0464, discussed a shooting that occurred on August 8, 2022, where unknown suspects shot multiple rounds into a residence located at 3261 North 29th Street, Milwaukee, Wisconsin. RODRIGUEZ-PEREZ informed FRANKLIN that the Police Department came to the residence located at 3265 North 29th Street and asked if they could search the house but they were not allowed to do so. Law enforcement reviewed Milwaukee Police report 22-220-0158 and confirmed a shoot at 3261 North 29th Street as discussed in the call. RODRIGUEZ-PEREZ then told FRANKLIN that everything had been removed from the house on the 29th. I had previously learned that the residence located at 3265 North 29th Street was believed to be a "Stash house" where it was believed to contain large amounts of illegal narcotics and United States Currency. Law enforcement became aware of this information, while USMTF was conducting surveillance at 3265 North 29th Street. During USMTF surveillance several hand-to-hand transactions were observed as well as individuals walking up to the residence and meeting

with an unidentified female. These individuals would provide large amounts of what appeared to be United States Currency to the female in plain view. Based on my training and experience, this conduct is consistent with drug sales being conduct from this residence. Further, CS stated that there was a "stash house" but he did not know the exact location. At the time of FRANKLIN's arrest, he was observed leaving 3265 North 29th Street and was in possession of $35,000.

125. Law enforcement also reviewed publicly available Instagram records belonging to MERIWETHER. On August 06, 2022, there was a conversation between "thereal_chefdon92" (MERIWETHER) and "lele_richvibez" (Unknown subject) where the unknow subject sends MERIWETHER a message stating "Finna call u I need sum more". MERIWETHER responds that he's in Kentucky and later sends another message to the unknown subject stating "NBS let me call somebody rq" and "And Que got some of that shit too he gone prolyl want like 50 tho". I know that MERIWETHER has referred to FRANKLIN as "QUE" or "Q" in other conversations with CS and in MERIWETHER's Instagram messages. After multiple video chats between the parties, MERIWETHER sends "1-414-426-0464" to the unknown subject. The two parties then discuss "200 a gram" and "nothing but hypes" who want "grams". Based on my training, experience, and investigation into the ADTO, these conversations are consistent with discussion of weights and prices of heroin. The parties also discuss selling suspected heroin in Minnesota and Ohio because of the prices they could charge in those areas.

**D. FRANKLIN'S OLD PHONE EXTRACTION – 414-412-6719**

126. FRANKLIN in possession of two cell phones during his arrest by USMTF. I obtained a state search warrant to conduct a forensic download of download of both cell phones. Law enforcement identified telephone number a 414-412-6719 as one of the devices. On 414-412-6719 there was communication with a subject identified in the contact list as "Alex" with a

phone number of 414-676-0097. Case agent later identified "Alex" as Alexy ROMERO during a traffic stop, which is further described in this affidavit. During the review of text messages, there was content on July 8, 2022, were FRANKLIN and another individual, later identified through Wisconsin Department of Corrections (DOC) records as Antonio E. HOWARD, traveled to a location identified as a Sam's Club located at 101 W. Oakton Street, Des Plaines, IL. Law enforcement searched through the DOC database for telephone number 414-501-9512 and this number was provided by HOWARD as his telephone number.

127.    The reason for traveling to that location was for FRANKLIN and HOWARD to pick up what was believed to be three pounds of marijuana from "Alex" (ROMERO). This belief was substantiated by reviewing numerous text message communications between FRANKLIN and ROMERO. The conversation centered around FRANKLIN purchasing narcotics from ROMERO and began on July 2, 2022, and continued through July 8, 2022, when FRANKLIN traveled to Des Plaines, IL. During the conversation, FRANKLIN indicated that he would like to purchase cocaine rather than marijuana. Based on my training, experience, and investigation into this ADTO and messages between FRANKLIN and ROMERO, when the two spoke regarding prices of what is believed to be kilograms of cocaine FRANKLIN argued with ROMERO, stating he gets better prices when he travels to Texas.

128.    Here is a summary of FRANKLIN's and ROMERO's (414-676-0097) conversation from July 2, 2022. FRANKLIN inquired with ROMERO as to the status of his narcotics stating, "my people got money ready". The conversation continued and ROMERO indicated that he, "got the grass" and that he "need(ed) to cash out 3". FRANKLIN responded by asking, "Ok so what's going on wit gurl they on my heals". It appears ROMERO continued to try to sell FRANKLIN marijuana however FRANKLIN again stated, "Bro Im cool on the weed I rather spend money on

gurl". FRANKLIN stated that he had $50,000 and inquired as to if he could purchase kilograms of cocaine for $19,000 each. ROMERO and FRANKLIN seem to disagree regarding prices and FRANKLIN stated, "Bro u on some bullshit I'm just bout to go Texas", indicating that he has a source of supply for cocaine in the state of Texas. Ultimately, FRANKLIN agreed to meet ROMERO to purchase three pounds of marijuana for an unknown price. ROMERO directed FRANKLIN to 101 W Oakton St, Des Plaines, IL 60018. Based on messages between the two, FRANKLIN subsequently drove to that address however after waiting several hours for ROMERO to arrive, leaves without meeting him. I am aware that the address lists to a Sam's Club warehouse retails store. Based on my training and experience he knows that the term "grass" is commonly used to refer to marijuana and the term "gurl" is commonly used to refer to cocaine.

129. On the morning of July 8, 2022, FRANKLIN texted the contact "Smoke 61st Marion", phone number 414-501-9512, "puking up gotta hit road". The two subsequently traveled to the Sam's Club warehouse retail store in Des Plaines Illinois. Through the DOC database, "Smoke 61st Marion" was identified as a nickname for HOWARD. Law enforcement also determined HOWARD resides near 61st and Marion.

130. On July 13, 2022, ROMERO and FRANKLIN agreed to meet. FRANKLIN sent the address "29 auer at 6" after ROMERO, 414-676-0097, sent messages at 2:14pm stating "So we can plan something" and "I have things lineing in LA".

131. On July 15, 2022, HOWARD (414-501-9512) text FRANKLIN's old number (414-412-6719) a photo of suspected marijuana. FRANKLIN responded with the address of 3265 North 29th Street, which based on the investigation case agents believe to be one of the stash houses used by the ADTO. HOWARD then responded to FRANKLIN that he was on his way.

Page 45

132.     On July 18, 2022, FRANKLIN, and ROMERO, 414-676-0097, discussed meeting again and FRANKLIN sent ROMERO, 414-676-0097, a message stating 3265 North 29th Street in Milwaukee, which was previously identified as the "stash house" of the ADTO. Later that evening ROMERO, 414-676-0097, sent FRANKLIN a message stating "come over" and provided FRANKLIN with a location of "Forest Home and Lincoln".   On July 18, 2022, at 6:35pm ROMERO, 414-676-0097, sent a message to FRANKLIN stating "Yo for the girl the number is 245 in there ready for Thursday".   FRANKLIN responded, "Bro if they can't throw me 1 on top of the 11 I buy cause they taxing ima just hit the road for 21500 a book".   Based on my training, experience, and investigation into the DTO, this communication is consistent with the parties communicating about amounts of controlled substances and payments for the controlled substance. I know the term "book" often is referred to be DTO in relation to kilograms of controlled substances. Further the parties discussing the term "taxing", which I am aware relates to the additional amount a drug source or DTO will charge in order to obtain a profit on the controlled substances during the sales.

133.     Law enforcement also reviewed text messages between FRANKLIN and Tasha BROWN, who identified herself as FRANKLIN's girlfriend to USMTF.   FRANKLIN also identified BROWN as his girlfriend to USMTF.  Messages on between FRANKLIN and BROWN were consistent with BROWN participating with FRANKLIN'S drug activities. On July 19, 2022, BROWN received a text message from FRANKLIN directing BROWN to place, "7g of hard on a scale".   Shortly after receiving the instruction BROWN replied with a photograph of suspected crack cocaine, placed on a digital scale which read 7.02 grams.

134.     Case agents also located on FRANKLIN's Phone extraction the number 414-426-0464 with listed contact "My Boi Rico".

Page 46

135.    Case agents also reviewed call detail records for HOWARD (414-501-9512). Between June 25, 2022, and August 1, 2022, HOWARD (414-501-9512) contacted FRANKLIN (414-412-6719) 192 times. Between July 2, 2022, and August 20, 2022, HOWARD (414-501-9512) contacted RODRIGUEZ-PEREZ (512-940-1862) 203 times. Also, between the short period of July 23, 2022, to July 31, 2022, HOWARD (414-501-9512) contacted BROWN (414-544-9294) eleven times.

### E.  JAIL CALLS WILLIE SHAW

136.    Based on the telephone numbers connected with the ADTO, case agent attempted to connect any of the ADTO's telephone numbers to possible calls with inmates.  Case agents located calls made between Racine County inmate Willie C. SHAW (DOB XX/XX.1991) and another telephone associated with the ADTO (414-254-8676).   Case agents then listen to several record jail calls with SHAW and telephone number 414-519-9779.   Case agents reviewed Wisconsin DOC records which indicated telephone number 414-519-9779 is a telephone number of Venus Brown and Mary Brown, listed sisters of SHAW.  During a call between SHAW and 414-519-9779, SHAW asked where "Tasha" was located.

137.    On September 16, 2022, SHAW calls 414-888-0699.  Based on the conversation, the female SHAW was talking with appeared to be his mother.  During the conversation, SHAW's mother added another female by the nickname "Boola" into the call.  SHAW asked about "Tasha" and what was her telephone number.  In the background another female's voice can be heard, and SHAW yelled "Tasha!".  The female responded, "Yeah?"  SHAW asked the female why he has not been able to get in touch with her over the phone and she advised him that she does not have

a phone.[1] SHAW eventually asked "Tasha" for a number that he could call her at, and Tasha provided the phone number 414-254-8676.

138.    On September 17, 2022, SHAWS calls 414-254-8676.  SHAW spoke to a female. SHAW and the female discussed several ongoing investigations, including an incident involving a person by the nickname Red getting into an argument and getting "heat", believed to be a firearm. The female informed Shaw that "Rico pulled up" (Rico is the nickname of RODRIGUEZ-PEREZ) and they drove to the area of 42nd and Auer and each "shot 5 times in the air".  The female then stated that the "hoes came back and shot up a house".  The female stated that afterwards "Detectives went up and down the block talking to people and Red told them it was Tasha BROWN and later received a call from Red telling her the Police were looking for me".

139.    SHAW then asked the female "who lives on 29th.  Based on review of Wisconsin DOC records and Wisconsin Circuit Court records regarding SHAW and the investigation into this DTO, case agents determined SHAW was referencing the address in which he was formerly residing at, 3265 North 29th Street.  The female responded "nobody".  SHAW and the female discussed a vehicle and items being taking from a vehicle.  SHAW asked BROWN "who are the little nigga's that Dontrell is fucking with they on shit?"  The female responded, "He just fuck with the Mexican" and Shaw asked, "What's the Mexican on?".  The female responded, "He be getting down bro".  Shaw then asked about who was staying with another person and the female responded, "That's him, the Mexican Rico".  The female then told SHAW that he will be "serving his cousins" when he gets out.

---

[1] This is consistent with law enforcement taking Tasha BROWN's telephone during FRANKLIN's arrest on August 2, 2022.

140.     Based on the content of the phone and the investigation into this ADTO, case agents determine the female caller to be BROWN. Specifically, during the call BROWN discusses how "Red" told on Tasha Brown.  BROWN then reference "me" in relation to the police looking for BROWN.   Additionally, SHAW discussed "Dontrell", which is BROWN's boyfriend, Dontrell FRANKLIN's name.  Lastly, it should be noted that "the Mexican" and "Rico" has been identified as nicknames for RODRIGUEZ-PEREZ.  Also, RODRIGUEZ-PEREZ is known to reside at 3122 North 21st Street in Milwaukee, with Shannone Brown, SHAW's sister according to Wisconsin DOC records.

**F.  INVESTIGATION OF "ALEX" 414-676-0097 (ROMERO)**

141.     While reviewing call detail records for 414-676-0097, the number is shown to have multiple contacts with two international numbers believed to be associated to individuals in Mexico from June 2022 through August 2022.  While reviewing those numbers, one was identified as 52-6511065056 which has been associated with money transfers originating in Phoenix, Arizona to Mexico.   There were additional calls to individuals in Indiana, Texas, Arizona, and Illinois.

142.     Contact was made with Chicago DEA Office who is currently investigating a cocaine distribution organization with direct Mexican Cartel ties.  One of the main targets in that investigation has a number identified as 224-538-9680.  While reviewing records from August 16, 2022, through August 30, 2022, there were 101 contacts, calls, and texts total, between the 224-538-9680 and ROMERO, 414-676-0097.  It was determined that ROMERO is the second top contact for Chicago DEA target number 224-538-9680.  Chicago DEA believes that ROMERO, 414-676-0097, is the main source of cocaine for their target and believes that ROMERO is an essential person of interest in their investigation.

Page 49

143. While reviewing records for contacts between ROMERO, 414-676-0097, and other ADTO members' numbers, there were several which were noteworthy. Between July 22, 2022, and October 13, 2022, there were a total of 342 contacts between ROMERO, 414-676-0097 and RODRIGUEZ-PEREZ (512-940-1862). Between July 1, 2022, and August 8, 2022, there were a total of 334 contacts between ROMERO, 414-676-0097, and FRANKLIN's old number (414-412-6719). Between August 30, 2022, and September 28, 2022, there were a total of 42 contacts between ROMERO, 414-676-0097, and RODRIGUEZ-PEREZ (414-426-0464). Between July 21, 2022, and July 24, 2022, there were a total of 12 contacts between ROMERO, 414-676-0097 and FRANKLIN's other possible number (414-324-5545).

144. Court authorized electronic surveillance indicated that ROMERO, 414-676-0097, was located at an area on Forest Home Ave in the City of Milwaukee. This information was consistent with information learned by case agents after reviewing FRANKLIN's old telephone, 414-412-6719. ROMERO told Franklin to come by ROMERO's house and references Forest Home and Lincoln Ave along with the "Walgreen's". Additional court authorized electronic surveillance warrant allowed case agents to determined that 414-676-0097 was located at a residence of 2242 West Forest Home Avenue, Milwaukee, Wisconsin. Electronic surveillance from October 25, 2022, captured a Black Ford F150 with Wisconsin registration RY1359 at the residence. Case agents were able to verify ROMERO's telephone 414-676-0097 was also at the area. Case agents observed a male operating the Ford F150. Additionally, electronic surveillance captured this same male and ROMERO's phone 414-676-009 traveling, consistent with ROMERO being the operator and only occupant of the Black Ford, most recently on November 1, 2022, and November 2, 2022.

145.     Case agents review Wisconsin DTO records and determined the Ford F150 is registered to Tasha BROWN, with a registered address for the vehicle being identified as 3907 North 24th Street, Milwaukee, WI.  This address has been previously identified as the address for FRANKLIN and BROWN.  This is also the location where controlled transactions for fentanyl, methamphetamine, and firearms have taken place on September 12, 2022, and October 19, 2022, the street in front of BROWN's residence.

146.     Electronic surveillance also indicated that that ROMERO's telephone number 414-676-0097 traveled to the Chicago area for a short period of time very few days and returns to the Milwaukee area.   For example, on October 15, 2022, at 3:00 p.m. ROMERO's telephone number 414-676-0097 left the Milwaukee area and traveled to the Chicago area.   On October 16, 2022, ROMERO's telephone number 414-676-0097 returned to the Milwaukee at 4:00 p.m.  Again, on October 18, 2022, at 6:20 p.m. ROMERO's telephone number 414-676-0097 left Wisconsin and traveled to the Chicago area near the O'Hare airport arriving at 7:00 p.m.  ROMERO's telephone number 414-676-0097 returned to the Milwaukee area that same evening at 7:50 p.m.  On October 20, 2022, at 8:30 p.m. ROMERO's telephone number 414-676-0097 left the Milwaukee area and traveled to the Elsdon, IL area.  ROMERO's telephone number 414-676-0097 returned that same evening to the Milwaukee area at 11:50 pm.    Additionally, on October 31, 2022, ROMERO's telephone number 414-676-0097 left the Milwaukee area at 10:30 a.m. and traveled to the Chicago downtown area.  ROMERO's telephone number 414-676-0097 returned to the Milwaukee that afternoon around 2:30 p.m.

147.     Based on the information learned from the phone records, ROMERO was still traveling to Chicago and returning to Milwaukee several times a week and was still in connection with many of the same Chicago targets that are under investigation by the DEA in Chicago.

Page 51

Additionally, ROMERO is also operating a vehicle registered to BROWN, who is the girlfriend of FRANKLIN.  BROWN and FRANKLIN are both known to be directly involved in assisting the ADTO with transactions of controlled substances.

148.    On November 10, 2022, MPD conducted a traffic stop of ROMERO and identified him as Alexy ROMERO.  Unfortunately, the following the traffic stop, ROMERO disconnected 414-676-0097.  Case agents are attempting to identify ROMERO's new telephone number.

## G.  INVESTIGATION OF JOHN WINSTON

149.    On October 10, 2022, investigators learned that a subject, identified as John I. WINSTON (DOB XX/XX/1969), was operating a 2021 Chevy Malibu with Nevada registration 675P27 and was subsequently stopped for a traffic violation by the Valparaiso Police Department in Porter County, Indiana.

150.    During the traffic stop, law enforcement ran a certified and trained drug K9 around the Malibu and the K9 alert to a controlled substance connection.  Law enforcement conducted a search of the Malibu a located in the trunk 62.58 pounds of a substance that later tested positive for methamphetamine.  The methamphetamine was located in a cardboard box with bundles of dryer sheets inside of it.  It also had red pepper flakes sprinkled on top of them.  During this time, law enforcement observed WINSTON, who was handcuffed, on his cell phone which had previously been confiscated.  Law enforcement approached and WINSTON threw the cellphone on the floorboard of the patrol squad.  While reviewing an in-car camera recording system, law enforcement determined that WINTON made a call to someone possibly identified as "Buck" and stated "they (Police) got the shit" and told the subject to "call Heem and all them".  After the call, WINSTON was heard stating "hey Siri do a factory reset do it" and "Confirm".  This was prior to

Page 52

Officer's noticing that WINSTON, who had been handcuffed and placed in the front seat of the squad, was utilizing his cellphone.

151.     During the arrest of WINSTON, law enforcement located approximately $5,000.00 in the right front pocket of WINSTON's jeans and approximately $1,500.00 in the left front pocket. The US Currency was subsequently scanned to determine if any of it had been utilized in previous transactions. Afterwards, it was determined that $500.00 in US Currency had been utilized in a transaction for 24.8 grams of fentanyl on September 12, 2022, with MERIWETHER, described previously. Investigators learned that WINSTON did not speak with law enforcement after his arrest. WINSTON later posted bail and was released after being charged in Porter County, IN.

152.     Investigators learned that the cellular phone WINSTON was in possession of at the time of his arrest had an assigned number of 574-532-9337. In checking cellular records, it was determined that there was no immediate connection between the WINSTON's telephone 574-532-9337 and the known number of MERIWETHER 414-999-6172. However, given the circumstance that the MERIWETHER DTO engages in the sale of methamphetamines and WINSTON was in possession of methamphetamines and the buy money provided to MERIWETHER on September 12, 2022, case agents believe there is a connection between the two.

153.     WINSTON's telephone (574-532-9337) was placed into property inventory and store in a way to preserve any evidence on the device; however, it was not forensically downloaded. After case agents determine that the cell phone belonging to WINSTON was never downloaded, it was requested and later approved that WINSTON's cellphone be sent to the Waukesha County Sheriff's Department to complete a forensic download. Case agents believe WINSTON's cellphone has evidence of drug trafficking and connections to the MERIWETHER DTO.

Page 53

154.     On December 05, 2022, the cellphone which was identified as an 11 series Pro Max Apple iPhone in a red case was received via certified mail along with an Apple iPad. Based on the model of the iPad, it appears that it does not have the capability to be forensically downloaded. The iPhone and iPad were placed into property inventory at the Waukesha County Drug Task Force.

155.     On December 16, 2022, case agents obtained a court order to download the cell phone belonging to WINSTON. After obtaining the warrant, the cell phone was taken to the Waukesha County Sheriff's Department where it was provided to case agents who determined that there would be limited information due to the fact that the phone had been powered down due to a loss of battery. Case agents would only be able to complete a "Before First Unlock" (BFU) download which would provide limited information since the cellphone was a newer iPhone model and it could not be forcefully unlocked. Case agents provided a copy of the download which was reviewed and later property inventory at the Waukesha County Drug Task Force. While reviewing the partial download, I did learn that the number associated with the cell phone was 574-532-9337. Once the review was completed, I did note that there was no evidentiary value of the information that was obtained and unless a complete download is conducted in the near future there will be no evidentiary value to the cell phone. The cell phone was returned to property inventory at the Waukesha County Drug Task Force along with a digital copy of the partial download.

### H. ADDITIONAL INVESTIGATION OF FRANKLIN'S TELEPHONE NUMBER 414-416-0868

156.     As part of the investigation of this ADTO, case agents attempted to identified possible numbers being used by FRANKLIN, given the seizure of his old telephone 414-412-6719. Following the undercover controlled substance and firearm transaction on October 27, 2022, when

Page 54

MERIWETHER contacted number 414-416-0868, law enforcement reviewed jail calls made through the Wisconsin DOC to 414-416-0868. Case agents located a jail called made by Montrell Hilson, who is currently incarcerated at the Kettle Moraine Correctional Institution. Hilson called 414-416-0868 and the content of the conversation was consistent with the caller of 414-416-0868 being FRANKLIN.

157. The call was placed on October 3, 2022, at 7:48 p.m. The number that was called was identified as 414-416-0868, determined to be a telephone number used by FRANKLIN. The call lasts approximately twenty-one minutes and twelve seconds. At the initial onset of the call, there is an initial greeting between Hilson and the unknown party, who was later identified at FRANKLIN. Hilson called FRANKLIN "T" and Hilson identified himself as "Nut". Hilson talked about how he sent FRANKLIN a letter, but it got sent back because FRANKLIN "got out". This conversation is consistent with the investigation that FRANKLIN was original arrest on August 2, 2022, but later released on August 26, 2022, after cash bail was posted. Case agent reviewed records with Milwaukee County Clerk's Office and learned Shannone Brown, Willie SHAW's sister, posted FRANKLIN's bail. As previously noted above, RODRIGUEZ-PEREZ is known to reside at 3122 North 21st Street in Milwaukee, with Shannone Brown.

158. At one minute and thirty-two seconds into the call FRANKLIN referenced getting arrested because of "this punk ass bitch Tasha". As part of the investigation, case agents determined that FRANKLIN was dating Tasha BROWN. Additionally, one reason for FRANKLIN's arrest was related to a domestic violence incident in which BROWN was the victim and FRANKLIN was the suspect.

159. At two minutes into the call FRANKLIN stated that he got bailed out for a "dub" then referenced how "they" took "30 g's" from him but he hired a lawyer and was going to get the

"truck and the money back". This again is consistent with law enforcement seizing approximately $35,000.00 and FRANKLIN's black Jeep Compass at the time of FRANKLIN's arrest on August 2, 2022. Case agents learned the black Jeep Compass was later released back to BROWN.

160. At three minutes and thirty-seven seconds into the call, FRANKLIN stated he got "this new number", reference the number Hilson contacted, 4141-412-6719. This information is consistent with law enforcement seizing FRANKLIN's old telephone 414-412-6719 during his arrest on August 2, 2022. At four minutes and twenty-six seconds another male is heard in the background and Hilson asks "who you with". FRANKLIN stated, "I'm by myself". During this time FRANKLIN asked, "what's the word" and the male in the background said "140" and FRANKLIN repeated "140" and says "c'mon". Based on my training, experience, and investigation into this ADTO, the conversation was between this unknown male and FRANKLIN may be consistent with FRANKLIN attempting to conduct a drug transaction.

161. At five minutes and twenty-eight seconds into the call Hilson referred to FRANKLIN as "Dontrell", which is FRANKLIN's first name. At eight minutes into the call Hilson referenced "1st, 2nd, and 3rd shift" when he gets out. FRANKLIN stated, "I don't even answer my phone unless it's for "2-3g's". Hilson continued to tell FRANKLIN that when he (Hilson) gets out of prison he can start selling "to 500 people" and all he needed "is a car and new phones". Based on my training, experience, and investigation into this ADOT, Hilson statements are consistent with the ADTO working together to sell controlled substance in different shifts and to a large number of people. FRANKLIN statements indicate that he only sells to individuals seeking larger amounts of controlled substance, which will then be re-sold by those individuals.

162. It was believed that the number 414-416-0868 was being utilized by FRANKLIN, given the above information from the controlled drug and gun transaction on October 27, 2022,

Page 56

and the jail call from October 3, 2022, with Hilson. Further, the black Jeep Compass that was utilized on the October 19, 2022, controlled transaction is believed to be the same black Jeep Compass that FRANKLIN and his girlfriend BROWN were arrested in by the United States Marshals Task Force August 2, 2022. Case agent were able to determine it was the same black Jeep Compass, given the red dealer black license plate and the matted blacked rims.

163. While reviewing cellular phone records from October 1, 2022, thru October 28, 2022, the number 414-416-0868, FRANKLIN's number, has been in contact with MERIWETHER's telephone 414-999-6172, a total of 278 times, telephone number 414-254-8676 93 times, HOWARD's telephone 414-501-9512 four times, RODRIGUEZ PEREZ's telephone 512-940-1862 three times, and RODRIGUEZ PEREZ's other telephone 414-426-0464 one time.

164. Case agents queried FRANKLIN's telephone 414-416-0868 via a law enforcement database, which identified the mobile carrier as US Cellular.

## I. IDENTIFICATION OF TEXAS DRUG SOURCE

165. Based on the investigation into the ADTO, case agent was aware that MERIWETHER was traveling to Texas to obtain a kilogram of heroin following the November 16, 2022, transaction with CS and the UC. Case agents reviewed MERIWETHER telephone MERIWETHER's telephone 414-999-6172 during the time MERIWETHER was in the Houston area. Case agents observed one number that was called multiple times while MERIWETHER was in Texas. MERIWETHER telephone 414-999-6172 had 16 contacts with **713-281-2632** while in Texas. Case agents enter **713-281-2632** into the public search engine of CashApp, given prior transactions with ADTO's members and CashApp. **713-281-2632** is associated to an individual with the account name "Boozilla" and a username of "$Badazzbacc". The CashApp profile picture

associated with the CashApp account shows an unidentified black male wearing a gray "Hilfiger" shirt with blue athletic shorts. This information was all publicly viewable.

166. Case agents then used Instagram search engine, given the ADTO's use of Instagram also to conduct business in the past. The name "Badazzbacc" was associated with an account linked to "Devan Stevens". The Instagram profile picture shows the same unidentified black male, wearing the same clothes, but the unidentified male is holding a young girl in his arms. Though this information located by case agents on Instagram was publicly viewable, "Devan Stevens" Instagram profile is private, so case agents was unable to view any other information associated with the profile.

167. Case agents then entered "Devan Stevens" into the Facebook search engine and two Facebook accounts for Devan Stevens appeared. Both accounts appeared to belong to the same person and in one of the Facebook profiles, which is also the one that appears to be the main Facebook profile, the URL shows a name Devan B. OWENS. In the other Facebook profile for Devan Stevens, the same picture that was observed in "Devan Stevens" Instagram profile picture was observed on the timeline thread posted on October 18, 2022. While reviewing both publicly accessible accounts, the same male appears as the primary user of both accounts and appears to be the same person in the photos on CashApp and Instagram. In the Facebook profile with the URL "Devan B. OWENS", the "Intro" states that OWENS lives in Houston, Texas, and is from Milwaukee, Wisconsin.

168. An open search was conducted through a law enforcement database and Wisconsin DOT records and an individual was located and identified as Devan S. OWENS M/B XX/XX/1994. After reviewing the DOT photo, it appeared the DOT photo for OWENS is the same person observed in the profile pictures for Instagram, Facebook, and CashApp. The DOT

Page 58

records also indicate that OWENS moved out of state with a notation stating that OWENS "moved to Texas on 10/14/22". A check of Texas DOT records was conducted and shows that OWENS holds a valid driver license with an address of 1714 Castlerock Drive, Houston, TX. The records do not indicate when the Texas license was issued.

169.  Case agents reviewed OWENS criminal history, which indicated that OWENS is currently on probation for a Milwaukee County Case 2017CF005253. OWENS was charged with Manufacture/Deliver Cocaine and Conspiracy to Commit. ON June 14, 2018, OWENS was sentenced to 48 months in prison and was released on May 24, 2022, to extended supervision.

170.  Case agents reviewed the court authorized electronic surveillance associated with the DTO's members, which had the only contact with OWENS on November 28, 2022, consisting of the 16 contacts between MERIWETHER and OWENS.

171.  Case agents reviewed the mapping of the area where MERIWETHER was stationary for several hours in the Houston, TX area on November 28, 2022. The records indicated that OWENS' address on Castlerock Driver is in the vicinity and within the radius of MERIWETHER's telephone 414-999-6172 during the time frame MERIWETHER was stationary.

172.  Case agents also reviewed one of the multiple public Facebook accounts for FRANKLIN, identified as "Trellbeen GettinTwoit" that connected to OWENS. On December 7, 2020, there was a post stating "Trellbeen GettinTwoit is with Devan Stevens" with the caption "Free bro". Based on case agents' investigation into OWENS, there is a connection to between FRANKLIN, MERIWETHER, and OWENS. Further investigation into other numbers utilized by OWENS is ongoing and investigators are following up identifying further associations and numbers linked to OWENS and the MERIWETHER DTO.

173.     OWENS had a previous address in Milwaukee identified as 5953 North 63rd Street #1, Milwaukee, WI according to court records.   In July, August, and September 2022, MERIWETHER's cellphone was known to ping in this area but MERIWETHER or his vehicle were never located.

## J.  IDENTIFICATION OF OTHERS ASSOCIATED WITH THE ADTO

174.    As part of the investigation into the ADTO, case agents attempted to identify other members associated with the ADTO.   Through court authorized electronic surveillance and physical surveillance of the ADTO case agents identified Cody L. MULLINS (DOB XX/XX/1986), Kemont BOYD (DOB XX/XX/1997) and Leo JEFF (DOB XX/XX/1998) as others associated with the ADTO.

175.    In review of MERIWETHER's telephone 414-999-6172 call detail records, case agents observed that telephone number 270-262-6887 was a top caller of MERIWETHER. Between October 22, 2022, through December 21, 2022, there were a total of 115 contacts with 270-262-6887 and MERIWETHER's telephone 414-999-6172.   Based on this contact, case agents believed MULLINS as being associated with the ADTO.

176.    Case agents conducted a public search of telephone number 270-262-6887. Telephone 270-262-6887 was associated with a CashApp account.   The 270-262-6887 CashApp account had a picture of a white male with a baseball hat on with the name "Cody" listed under the picture and the account username of "$21519Slimjim" under "Cody".   (Figure 2).

Page 60



(Figure 2)

177.    Case agents then conducted a search of 270-262-6887 in law enforcement databases, which indicated 270-262-6887 was associated to a Mackenzie L. BYERS with an address of 6146 West 2nd Street, Richland, Indiana.  Case agents observed Cody L. MULLINS (DOB XX/XX/1986) was listed as a known relative of BYERS in the law enforcement database. This was consistent with the name "Cody" being used on the CashApp account associated with telephone 270-262-6887.

178.    Case agents then conducted a search of MULLINS in law enforcement database and found a previous address for MULLINS as 6146 West 2nd Street Richland, IN, the same as BYERS.

179.    Case agents also located a public Facebook account for Cody MULLINS, which had two photos, which appear to be the same person shown in the photo for the CashApp account associated with 270-262-6887.  Based on the information gathered by case agents, it is believed the user of 270-262-6887 is MULLINS.

180.   Case agents learned that MULLINS has an open criminal case, which was initiated on August 4, 2022, through Marshal Superior Court in Indiana.  MULLINS was charged with the following offenses: (1) dealing in methamphetamine/delivery of methamphetamine, amount of 10 or more grams; (2) possession of methamphetamine, possession of 28 or more grams of methamphetamine; and (3) possession of marijuana.

181.   Case agents also reviewed MULLINS criminal history and observed he has a significant drug history.  MULLINS had been charged with multiple drug related crimes and has a very lengthy criminal history.  MULLINS was charged in Kentucky in July 2016 with possession of controlled substance 1st degree- methamphetamine.

182.   Using law enforcement databased, case agents located several different addresses for MULLINS including addresses in Kentucky, Tennessee, Indiana, and Texas.  Based on review of law enforcement databases, it appears MULLINS listed address in Richland, Indiana is the most current address.

183.   Case agents have identified Kemont BOYD being associated with the ADTO. Case agents identified 414-998-7220 as a number associated with BOYD.  Case agents observed that between October 22, 2022, to December 21, 2022, BOYD's telephone 414-998-7220 and MERIWETHER's telephone 414-999-6172 had a total of 12 contacts.  During this same time frame, BOYD's telephone 414-998-7220 and OWENS' telephone **713-281-2632** had one contact.

184.   Case agents have reviewed social media accounts of MERIWETHER and BOYD. BOYD has multiple Instagram profiles with one been identified "richvibe_monty2x."  While reviewing the profile BOYD is observed in several photos flashing large amounts of United States currency and in possession of firearms.

185.   On November 30, 2022, BOYD post four pictures of himself where he appears to

Page 62

be in a hotel room.  The first picture shows BOYD holding a large amount cash and flashing what appears to be a gang sign in his other hand.  BOYD is wearing a gold-colored hat, black and gold shirt, blue jeans, and black and gold tennis shoes.  In the second picture, only the feet of BOYD are visible, but they are the same distinct shoes that BOYD is seen wearing in the first photo.  Next to the feet is a large amount of cash spread out on the floor along with one black handgun and on tan/green colored handgun. The fourth picture shows a hand holding a large amount of cash and in the background on top of a counter is the same tan/green colored handgun observed in the third photo. In the fourth photo there is a watch that is visible on the hand, and it is consistent with the same watch observed on BOYD in the first photo.

186.    On December 21, 2022, BOYD posted a short video on Instagram where it appears it was taken inside a vehicle and the camera pans to the center console where there are two black handguns located in the cup holder, with one of them having an extended magazine.  There is a time stamp of 11:50 a.m.

187.    BOYD is known convicted felon, with convictions for Armed Robbery with Threat of Force.  BOYD currently has an active felony probation warrant through the Wisconsin Department of Corrections (DOC). Case agents have reviewed several social media videos and pictures and there is a clear connection between MERIWETHER and BOYD.

188.    Case agents have identified Leo JEFF being associated with the ADTO. On December 10, 2022, Leo JEFF was charged in Milwaukee County Case 2022CF4808 with Drive/Operate without owners' consent, Vehicle Operator Flee/Elude Officer, and 2nd degree Recklessly Endangering Safety related to a pursuit in the City of Milwaukee.  JEFF drove a vehicle and fled when the City of Milwaukee Police Department attempted to stop him. Case agents reviewed jail calls made by JEF while he was in custody.  From custody, JEFF called telephone

Page 63

number 414-763-9677. Case agents determined this number was associated with BOYD's mother, Nakesha BOYD, and her address of 1349 South 73rd Street, West Allis, WI. JEFF and BOYD spoke about the pursuit and JEFF made several comments about having a "female" "wipe" his cell phone and indicated that another individual was currently in possession of his cell phone. JEFF then asks for "Juans" number. BOYD does not provide the number but does call Azjuan MERIWETHER. Case agents are familiar with MERIWETHER and was able to determine that MERIWETHER was the individual called by BOYD based on past interactions with MERIWETHER and recognizing MERIWETHER's voice. JEFF, BOYD, and MERIWETHER spoke briefly about the pursuit and possible bail before the call was terminated. Case agents later determined that JEFF was issued a $1,500.00 bail for his charges, and was subsequently bailed out by BOYD's mother, Nakesha BOYD on December 11, 2022.

## K. IDENTIFICATION OF PHONE APPLICATION USED BY ADTO

189.    As part of the investigation into the ADTO, case agents identified several active accounts on WhatsApp for telephone numbers associated with the ADTO including RODRIGUEZ-PEREZ (414-426-0464), IACONO (262-290-1566) and OWENS (**713-281-2632**).

190.    As part of the investigation into the ADTO, case agents also identified a Snapchat account associated with MERIWETHER, "richvibe_chef92".

191.    Case agents continue to monitor court authorized electronic surveillance for the ADTO members. Case agents are familiar with messaging applications like WhatsApp and Snapchat, which are encrypted and are not observed in the records, though data information is obtained indicating that the user of the cell phone is using data. Based on my training and experience, I know this type of data is known to be associated with messaging applications such as WhatsApp and Snapchat. Case agents have identified several members of the ADTO that have

Page 64

active WhatsApp accounts and it is believed that there is ongoing communication between the members based on the limited number of calls and text, along with data that is being received. Case agents have observed large amounts of outgoing data which can be attributed to messaging applications, being WhatsApp and Snapchat.

## L.  SURVEILLANCE OF ADTO

192.    On October 7, 2022, Honorable Judge Stephen C. Dries authorized a warrant for electronic surveillance for 414-254-8676, 414-426-0464 and 512-940-1862, 414-501-9512, 414-999-6172, and 414-676-0097, which were served on each respective service providers.

193.    On November 4, 2022, Honorable Judge Stephen C. Dries authorized an extension warrant for electronic surveillance for cellular telephone assigned call number 414-254-8676, 414-426-0464, 512-940-1862, 414-501-9512, 414-999-6172, and 414-676-0097, which were served on each respective service providers.

194.    On November 8, 2022, Honorable Judge Nancy Joseph authorized a warrant for electronic surveillance for cellular telephone assigned call number 414-416-0868, which was served on its respective service provider.

195.    On December 2, 2022, Honorable Judge Stephen C. Dries authorized an extension warrant for electronic surveillance for cellular telephone assigned call number 414-254-8676, 414-426-0464, 512-940-1862, 414-501-9512, and 414-999-6172, which were served on each respective service providers.

196.    On December 2, 2022, Honorable Judge William E. Duffin authorized a warrant for cellular telephone assigned call number **713-281-2632**, which was served on the service provider.

197.    On December 5, 2022, Honorable Judge Nancy Joseph authorized an extension

Page 65

warrant for electronic surveillance for cellular telephone assigned call number 414-416-0868, which was served on the service provider.

198.    On December 29, 2022, Honorable Judge William E. Duffin authorized an extension for the warrant for cellular telephone assigned call number **713-281-2632**, which was served on the service provider.

199.    On December 30, 2022, Honorable Judge William E. Duffin authorized a warrant for the cellular telephone assigned call number 414-254-8676, which was served on the service provider.

200.    Case agents has used the court-authorized electronic surveillance of the ADTO's members, which supports information provided from CS, UC and physical surveillance which demonstrates the continual ongoing nature of this ADTO, some of which has been discussed above.

201.    Case agents reviewed court authorized electronic surveillance to identify other possible members of the DTO.  The telephone 262-290-1566 was found to be in contact with multiple targets of the MERIWETHER DTO.  Between September 14, 2022, and November 23, 2022, there was a total of 334 contacts between 262-290-1566 and FRANKLIN's telephone 414-416-0868.  Between September 13, 2022, and December 11, 2022, there was a total of 499 contacts between 262-290-1566 and RODRIGUEZ-PEREZ.    Case agents reviewed law enforcement databased and identified Kennith A. IACONO (DOB XX/XX/1996) as associated with 262-290-1566.  Further case agents determined address of 2966 North Cramer, Milwaukee, WI was associated with IACONO.  Case agents conducted a web search of 2966 North Cramer, Milwaukee, WI, and the address is associated with "Roots Recovery House-Milwaukee Gender Specific Sober Living".  Based on training, experience, and the investigation into the DTO, the

Page 66

information that IACONO is currently residing at a residence identified as a sober living facility and has a large number of contacts with FRANKLIN and RODRIGUEZ-PEREZ. who are known drug traffickers, it is believed that IACONO has information related to the MERIWETHER ADTO.

202.    Case agents has used the court authorized electronic surveillance of the ADTO's members, which supports information provided from CS, UC and physical surveillance which demonstrates the continual ongoing nature of this ADTO, some of which has been discussed above.

### a. Electronic Surveillance Between October 1, 2022, to October 31, 2022

203.    While reviewing the call logs for MERIWETHER 414-999-6172 from October 1, 2022, through October 31, 2022, there were several numbers of interest that MERIWETHER was in contact with during this time frame.   MERIWETHER was found to be in contact with FRANKLIN's number, 414-416-0868.   Between October 1, 2022, and October 31, 2022, case agents located a total of 286 contacts between MERIWETHER's telephone 414-999-6172 and FRANKLIN's telephone  414-416-0868.   This information is valuable given the fact that FRANKLIN has been present for the undercover controlled drugs and firearms purchases on September 22, 2022, October 19, 2022, and October 27, 20220.   Additionally, during the undercover controlled drug and firearms purchase on October 19, 2022, MERIWETHER used his telephone 414-999-6172 to contact FRANKLIN's number 414-416-0868 to discuss the rifle being sold to the UC.  Also on October 19, 2022, case agents observed FRANKLIN inside the black Jeep Compass that MERIWETHER exited.  During on the August 2, 2022, arrest of FRANKLIN, FRANKLIN and BROWN were also observed in this same black Jeep Compass.

204.    In review of call detail records between October 1, 2022, and October 31, 2022,

case agents observed that MERIWETHER's telephone 414-999-6172, was also in contact with 812-449-8581, which is a number associated to a known supplier of illegal narcotics in the Evansville, Indiana area.  There was a total of 403 contacts between MERIWETHER's telephone 414-999-6172and 812-449-8581.

205.    Case agents reviewed call detail records for MERIWETHER's telephone 414-999-6172.    Between October 1, 2022, and October 31, 2022, case agents observed that MERIWETHER's telephone 414-999-6172, was in contact with 414-254-8676, which as described in previously paragraphs, is a number associated with members of the ADTO including SHAW and BROWN.    Case agents located a total of 42 contacts between MERIWETHER's telephone 414-999-6172 and 414-254-8676.

206.    Case agents reviewed additional call detail records for telephone number 414-254-8676 from October 1, 2022, through October 31, 2022, and identified ongoing contacts with members of the ADTO.    As noted above case agents located 42 contacts between MERIWETHER's telephone 414-999-6172 and 414-254-8676.  The telephone number 414-254-8676 was in contact with FRANKLIN's telephone 414-416-0868 a total of 93 times.  In addition, 414-254-8676 was in contact with a number identified as 414-484-6089 a total of 1, 177 times, which is an unknown user.  Case agents are still attempting to identify the user of 414-484-6089.

207.    The telephone number 414-254-8676 has still not been identified but based on the call detail records, it appears that the user has intimate knowledge of the ADTO's business.  On September 22, 2022, the date of one of the undercover controlled transactions, MERIWETHER's telephone number 414-999-6172 was in connect with 414-254-8676 twenty-one times.    On October 19, 2022, the date of another undercover controlled transaction, FRANKLIN's telephone 414-416-0868 was in connect with 414-254-8676 eight times.  On October 27, 2022, the date of

Page 68

another undercover controlled transaction, MERIWETHER using telephone number 414-999-6172 was in connect with 414-254-8676 twenty times and FRANKLIN's telephone 414-416-0868 was in connect with 414-254-8676 eight times.

208.     Case agents also reviewed call detail records for RODRIGUEZ-PEREZ's telephone 414-426-0464 from October1, 2022 through October 31, 2022.  Case agents observed contacts with members of the ADTO and 414-426-0464. RODRIGUEZ-PEREZ's telephone 414-426-0464 was in contact with HOWARD's telephone 414-501-9512 a total of 59 times. RODRIGUEZ-PEREZ's telephone 414-426-0464 was in contact with MERIWETHER 414-999-6172 four times.  Also, RODRIGUEZ-PEREZ's telephone 414-426-0464 was in contact with FRANKLIN's telephone 414-416-0868 one time.

209.     Case agents also review call detail records for the RODRIGUEZ-PEREZ other telephone 512-940-1862 from October 1, 2022, through October 31, 2022.  Similar to the other identified telephones being used by the ADTO, RODRIGUEZ-PEREZ's telephone 512-940-1862 had ongoing contact with members of the ADTO.  RODRIGUEZ-PEREZ's telephone 512-940-1862 was in contact with ROMERO's telephone 414-676-0097 two times.

210.     RODRIGUEZ-PEREZ's telephones 512-940-1862 and 414-426-0464 are significant due to the fact RODRIGUEZ-PEREZ was present for a controlled transaction between MERIWETHER and CS on October 13, 2022.  During this transaction MERIWETHER sold 50.7 grams of fentanyl to CS.  In addition, there was discussion between MERIWETHER and CS about purchasing kilograms of heroin from a source in Texas.  MERIWETHER stated that the "Mexican" has a source in Texas.  As previously noted, members of the ADTO refer to RODRIGUEZ-PEREZ as "the Mexican".

211.     Case agents review call detail records for ROMERO's telephone 414-676-0097

Page 69

between October 1, 2022, and October 31, 2022. ROMERO's telephone 414-676-0097 was in contact with RODRIGUEZ-PEREZ's telephone 512-940-1862 two times, as previously noted.

**b. Electronic Surveillance Between November 1, 2022, to November 29, 2022**

212.     In addition to the electronic surveillance of MERIWETHER's telephone 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 and his travel in November, case agents also reviewed electronic surveillance for RODRIGUEZ-PEREZ 414-426-0464. Electronic surveillance for RODRIGUEZ-PEREZ 414-426-0464 indicated he has taken multiple short-term trips to the Illinois area. On November 22, 2022, RODRIGUEZ-PEREZ traveled from the Milwaukee/Kenosha area at approximately 8:30 p.m. to the Antioch, IL area. RODRIGUEZ-PEREZ arrived at approximately 10:20 p.m. RODRIGUEZ-PEREZ stopped for 10 minutes and began traveling back to the Milwaukee area at 10:30 p.m. where he returned around 12:15 am on November 23, 2022. Based on my training, experience, and investigation into this ADTO, this short-term trip is consistent with RODRIGUEZ-PEREZ conducting drug trafficking business.

213.     Case agents reviewed call detail records for MERIWETHER's telephone 414-999-6172. Between November 1, 2022, and November 29, 2022, case agents observed that MERIWETHER's telephone 414-999-6172 was in contact with FRANKLIN's telephone 414-416-0868 91 times. Between November 1, 2022, and November 12, 2022, case agents observed that MERIWETHER's telephone 414-999-6172 was in contact with telephone number 414-254-8676 79 times. It should be noted that due to technical issues, telephone number 414-254-8676 service provider only provided case agents with information until November 12, 2022, though the court order authorized 30 days of information.

214.     Case agents reviewed call detail records for FRANKLIN's telephone 414-416-0868. Between November 1, 2022, and November 29, 2022, case agents observed that

Page 70

FRANKLIN's telephone 414-416-0868, was in contact with MERIWETHER's telephone 414-999-6172 91 times. Between November 1, 2022, and November 29, 2022, case agents observed that FRANKLIN's telephone 414-416-0868, was in contact with telephone number 414-254-8676 16 times.

215. The telephone number 414-254-8676 has still not been identified but based on the call detail records, it appears that the user has intimate knowledge of the ADTO's business. Between November 1, 2022, and November 12, 2022, case agents observed that 414-254-8676 was in contact with MERIWETHER's telephone 414-999-6172 91 times, 16 times with FRANKLIN's telephone 414-416-0868, and 13 times with RODRIGUEZ-PEREZ's telephone 414-426-0464.

216. Case agents reviewed call detail records for RODRIGUEZ-PEREZ's telephone 512-940-1862. Between November 1, 2022, and November 29, 2022, case agents observed that RODRIGUEZ-PEREZ's telephone 512-940-1862, was in contact with ROMERO's 414-676-0097 four times.

217. Case agents reviewed call detail records for RODRIGUEZ-PEREZ's telephone 414-426-0464. Between November 1, 2022, and November 29, 2022, case agents observed that RODRIGUEZ-PEREZ's telephone 414-426-0464, was in contact with telephone 414-254-8676 13 times, 35 times with HOWARD's telephone 414-501-9512, and was in contact with ROMERO's telephone two times.

218. Case agents reviewed call detail records for HOWARD's telephone 414-501-9512. Between November 1, 2022, and November 29, 2022, case agents observed that HOWARD's telephone 414-501-9512, was in contact with RODRIGUEZ-PEREZ's telephone 414-426-0464 35 times.

### c. Electronic Surveillance Between November 30, 2022, to December 27, 2022

219.    While reviewing the involvement of number 414-254-8676, case agents learned that there was a significant change in the calls that were incoming and outgoing with the 414-254-8676 line, specifically with calls to OWENS, **713-281-2632**.  Case agents then learned that 414-254-8676 was ported from US Cellular to T-Mobile in early December 2022.  Following the porting of 414-254-8676 to T-Mobile, case agents no longer obtained electronic surveillance for the number.  Further, during this change, the subscriber's name changed to "Travon Martin."  During the review of FRANKLIN's old number, 414-412-6719 phone extraction, case agents observed that FRANKLIN used the name "Travon Martin" for his email.  Case agents also observed a decrease in FRANKLIN's other telephone 414-416-0868 being used.

220.    Case agents reviewed the call detail records for 414-254-8676. There was a total of 186 contacts with Meriwether's telephone 414-999-6172, 78 contacts with IACONO's telephone 262-290-1566, 55 contacts with OWENS' telephone **713-281-2632**, 36 contacts with FRANKLIN's other telephone 414-416-0868, 23 contacts with RODRIGUEZ-PEREZ's telephone 414-426-0464, three contacts with ROMERO's telephone 414-676-0097, and numerous contacts with various phone numbers for a total of 14,058 calls made during this timeframe.

221.    Based on the change in activity, different contacts, and subscriber name change, case agents believe that FRANKLIN is now in possession of the 414-254-8676 phone and is using 414-254-8676 for ADTO business purposes.

222.    Case agents reviewed call detail records for FRANKIN's telephone 414-254-8676. Between November 29, 2022, and December 27, 2022, case agents observed that FRANKIN's telephone 414-254-8676 had 61 contacts with OWENS' telephone **713-281-2632**, 104 contacts with MERIWETHER's telephone 414-999-6172, eight contacts with RODRIGUEZ-PEREZ's

Page 72

telephone 414-426-0464, six contacts IACONO's telephone 262-290-1566, and one contact with a number previously utilized by Alexy ROMERO, 414-676-0097.

223.    Case agents reviewed call detail records for MERIWETHER's telephone 414-999-6172.   Between November 29, 2022, and December 27, 2022, case agents observed that MERIWETHER's telephone 414-999-6172 had 162 contacts with MULLINS' telephone 270-262-6887, 104 contacts with FRANKLIN's telephone 414-254-8676, 53 contacts with Savanna WILLIAMS' telephone 262-374-7878, six contacts with RODRIGUEZ-PEREZ's telephone 414-426-0464, and two contacts with FRANKLIN's other telephone 414-416-0868.

224.    Case agents reviewed call detail records for RODRIGUEZ PEREZ's telephone 414-426-0464.   Between November 29, 2022, and December 27, 2022, case agents observed that RODRIGUEZ PEREZ's telephone 414-426-0464 had 110 contacts with IACONO's telephone 262-290-1566, 40 contacts with HOWARD's telephone 414-501-9512, eight contacts with FRANKLIN's telephone 414-254-8676, three contacts with MERIWETHER's telephone 414-999-6172, 34 CONTACTS with Shannone BROWN 414-551-8136, which was identified as Shannone BROWN's telephone number, and 53 contacts with a number for Joel FRANKLIN, identified as 262-666-1420 which is associated to a family member of Dontrell FRANKLIN.

225.    Case agents reviewed call detail records for OWENS's telephone 713-409-3612. Between November 29, 2022, and December 27, 2022, case agents observed that OWENS's telephone 713-409-3612 had 61 contacts with FRANKLIN's telephone 414-254-8676.

**d.    Electronic Surveillance Between December 28, 2022, to January 30, 2023**

226.    Case agents continued to review court authorized electronic of FRANKLIN's telephone 414-254-8676 during his trip to Texas in January 2023.   Case agents observed that on January 16, 2023, through January 18, 2023, FRANKLIN traveled to Houston, Texas and made

contact with Devan OWENS's telephone **713-281-2632**. This was similar conduct that case agents observed when MERIWETHER and FRANKLIN traveled to Texas and contacted OWENS' telephone **713-281-2632** in December 2022, as previously described.

227. As described previously, FRANKLIN was operating a 2018 Jeep Cherokee SUV, with Wisconsin registration ARL-7820, which is registered to BROWN, during the January 2023 trip to Texas. Case Agents were able to locate photographs of the Jeep Cherokee in the Houston area starting on Monday, January 16, 2023.

228. Case agents observed that FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were active between January 16, 2023, through January 28, 2023, and both FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** indicated being in the Houston area. Both FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact multiple times with each other during this same time also. For example, on January 17, 2023, at approximately 4:40 pm FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact. Then at 4:59 pm, FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** plotted to the same general vicinity. Then at 5:23 pm, FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact again. Shortly after this overlap in location, FRANKLIN's telephone 414-254-8676 began to travel north out of the Houston area and ultimately back to Milwaukee, Wisconsin. Based on review of FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** and statements made by FRANKLIN to CS, the information is consistent with FRANKLIN and OWENS possibly meeting in person to obtain additional controlled substances. As outlined previously, FRANKLIN indicated to CS that he (FRANKLIN) was waiting to pick up the "Tar heroin" before returning to Wisconsin. Immediately after

Page 74

FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact and appeared to be overlapping with each other on January 17, 2023, FRANKLIN's telephone 414-254-8676 then began traveling back to Wisconsin.

229. Case agents reviewed the contact frequency report for the number associated with FRANKLIN's telephone 414-254-8676 from December 25, 2022, through January 25, 2023. During this time frame FRANKLIN has had numerous contacts with individuals known to be involved with the ADTO. FRANKLIN's telephone 414-254-8676 has had 317 contacts with BROWN's telephone 414-484-6089. FRANKLIN's telephone 414-254-8676 has had 208 contacts with MERIWETHER's Vermillion County Jail line 262-565-6439. FRANKLIN's telephone 414-254-8676 has had 93 contacts with OWENS's telephone **713-281-2632**. FRANKLIN's telephone 414-254-8676 has had 93 contacts with KING's telephone 414-275-6780. FRANKLIN's telephone 414-254-8676 has had 29 contacts with WILLIAMS's telephone 262-374-7878. FRANKLIN's telephone 414-254-8676 has had 39 contacts with BLAIN's telephone 224-239-0997.

## M. ARREST OF MERIWETHER AND ADTO SURVEILLANCE

### a. Meriweather's Arrest in Indiana – December 27, 2022.

230. On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement. Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of pound of methamphetamine, and a quarter of pound cocaine. The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. During a search of MERIWETHER's vehicle, law enforcement located two digital scales with a white powdery

Page 75

residue on them, suspected marijuana, several "small diamonds, and two cell phones (iPhones), one of which was linked to the vehicles GPS system showing the vehicle was enroute to an address in Evansville, Indiana. All of these items were collected for evidentiary purposes. Investigators later obtained a warrant to conduct a forensic download of the cell phones MERIWETHER was in possession of during his arrest.

231. MERIWETHER was subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia. The charges included possession with intent to deliver heroin, possession with intent to deliver methamphetamine, and possession with intent to deliver cocaine. MERIWETHER was issued a "$200,000.00 cash bond only" at his initial court appearance.

**b. Surveillance at 5146 North 60th Street, Milwaukee, Wisconsin – December 27, 2022.**

232. Case agents reviewed footage of a pole camera that had been placed in the vicinity of 5146 North 60th Street, Milwaukee, Wisconsin. This location was the site of a previous transaction, where a CS and UC entered the residence and conducted a transaction with MERIWETHER and observed items associated with the "cutting "or manufacturing process related to illegal narcotics. The pole camera was installed on December 27, 2022, just prior to MERIWETHER's arrest in Indiana Case agents documented the fact that Vermillion County, IN was one hour ahead, eastern standard time (EST), of the Milwaukee, WI area, central standard time (CST). The original time of stop in Indiana was approximately 4:05 p.m., EST, and MERIWETHER was taken into custody at 5:00 p.m. EST.

233. While conducting the review of the pole camera, case agents observed that on December 27, 2022, at 4:52 p.m. CST a Ford Escape with no known vehicle registration backs in

the in the driveway, an unknown female exits the front passenger seat and a male, who is believed to be Laron N. KING, exits the front driver's side, and enter the residence together. Case agents were provided a description of KING by CS. Case agent also reviewed KING's DOT photo, publicly viewable social media with KING's imagines, and recordings between CS and KING. Based on the males and KING's facial and hair similarities, case agents believe this male was KING.

234. On December 27, 2022, at 4:57 p.m. KING exits 5146 North 60th Street, Milwaukee, Wisconsin and went to the rear driver's side of the Escape. KING appeared to either place something inside the Escape or remove something before returning to the residence.

235. Case agents observed that at 5:07 p.m. an unknown make/model SUV pulled in front of the residence and stopped on North 60th Street. An unknown female exited the SUV and walked up to the front door and entered 5146 North 60th Street, Milwaukee, Wisconsin. This unknown female then exited two minutes later and entered the SUV. The unknown SUV then drove away.

236. Still on December 27, 2022, at 8:00 p.m. an unknown make/model sedan pulled in the driveway of 5146 North 60th Street, Milwaukee, Wisconsin. An unknown individual exited the driver's side and walked up to the side door of the residence. The individual knocked on the side door and was let inside the residence. At 8:26 p.m. the driver of the sedan exited the residence with something in their arms and placed it inside the sedan. The driver then entered the sedan and remained in the driveway.

237. Case agents observed on the pole camera at 8:28 p.m. the two known remaining individuals who were originally in the Escape exited 5146 North 60th Street, Milwaukee, Wisconsin. KING was observed holding the door for the female who appeared to be carrying

something to the passenger side of the Escape before entering it. KING then closed the door and entered the Escape and both the Escape and sedan drove off.

238.     Case agent also observed that at 8:49 p.m. an unknown male entered the camera view and went to the side door of 5146 North 60th Street, Milwaukee, Wisconsin. This unknown mail knocked on the door. It appeared no one answered the door and the male walked to the front door and knocked on the door. Again, it appeared that no one responded to his knocks. The male was then seen on his cell phone at this point and subsequently walked to the rear of the residence out of camera view. At 9:34 pm an unknown male exited the front door and looked around. The male then entered the residence again with no further activity. There was no further activity at the residence for the remainder of December 27, 2022.

### c. Electronic and physical surveillance of the ADTO during and following MERIWETHER's arrest.

239.     Case agents reviewed call detail records for MERIWETHER's telephone 414-999-6172. On December 27, 2022, MERIWETHER had 29 contacts with MULLINS's telephone 270-262-6887. Case agents are aware that MERIWETHER's pursuit began approximately 3:00 p.m. CST.

240.     On December 27, 2022, prior to the pursuit, there was a text message exchange from 11:40 a.m. through 11:42 a.m. MERIWETHER sent three texts to MULLINS and MULLINS sent two texts to MERIWETHER. There was no further contact until the mass messages that MULLINS sent during the pursuit.  On December 27, 2022, from 3:31 p.m. CST through 12:00 a.m. CST on December 28, 2022, MULLINS 270-262-6887 sent approximately 24 text messages to MERIWETHER. These messages were all incoming and it appears that there were no outgoing texts.

Page 78

241.    Case agents are aware that MERIWETHER's pursuit and subsequent arrest made local news and was posted on social media in the Vermillion County Indiana area where the pursuit was initiated.   There were local news stations which had posted video of MERIWETHER, handcuffed, and being led by law enforcement to a marked squad.   MERIWETHER was easily identifiable as the person in custody, given the quality of the video.

242.    Case agents learned that MERIWETHER was used the phone system in the Vermilion County Jail to make phone calls and also to send and receive text messages on a jail authorized cell phone that is monitored by the phone system provider.  Case agents were provided access to all calls and texts, incoming and outgoing, for MERIWETHER while in custody. From the arrest date of December 27, 2022, thru January 11, 2022, MERIWETHER has called FRANKLIN's telephone 414-254-8676, 88 times.  There has been a total of 65 texts exchanges between MERIWETHER and FRANKLIN.

243.    Case agent continued surveillance on FRANKLIN and January 5, 2023, at 11:00 a.m. case agents observed BROWN's black Jeep at the Diamond Inn Motel located at 6222 West Fond Du Lac Avenue, Milwaukee, Wisconsin.  As previously descripted, FRANKLIN is known to use BROWN's Jeep.  The black Jeep had Wisconsin license plate ARL-7820, which registered to BROWN. Case agents then observed several individuals exit an unknown room on the second level of the motel.  Case agents identified one of the individuals as FRANKLIN.  FRANKLIN was observed entering the Jeep which was parked in the lower level of the parking and proceeded to exit the lot and travel to the "Exclusive 414" clothing store located at 5740 West Fond Du Lac Avenue, Milwaukee, Wisconsin.  FRANKLIN parked his vehicle and entered the store and was inside for an unknown amount of time before exiting.  Surveillance was terminated at that point.

As previously described, case agents are aware that this ADTO will used hotels in order to cut and package the illegal narcotics that are then sold.

244.    On January 6, 2023, case agents again located BROWN's Jeep at the Diamond Inn Motel at 7:00 a.m.  At 8:30 a.m. case agents observed FRANKLIN exit the motel and enter the Jeep.  FRANKLIN was followed for a lengthy period of time before the surveillance team lost visual contact with FRANKLIN.  Members of the surveillance team observed FRANKLIN return to the Diamond Inn Motel at approximately 9:30 a.m., where it remained before surveillance was concluded

245.    Based on reviewed of court authorized electronic surveillance, case agents are aware that FRANKLIN left the Milwaukee area on the evening of January 6, 2023, and traveled to the Indiana area.  Case agents believe that RODRIGUEZ-PEREZ was traveling with FRANKLIN for a period of time on January 6, 2023.  The court authorized electronic surveillance indicated that FRANKLIN and RODRIGUEZ-PEREZ were traveling south into the Illinois area at the same time, before FRANKLIN continued traveling towards Indiana. RODRIGUEZ-PEREZ then returned from Illinois to Wisconsin on January 7, 2023.  FRANKLIN returned to the Milwaukee area on January 8, 2023.

246.    FRANKLIN left the Milwaukee area again, traveling south on January 11, 2023. FRANKLIN then traveled to the Illinois area and was in contact with a number identified as 224-239-0997.  Case agents reviewed tolls and found that there have been 408 contacts between 224-239-0997, and several numbers associated with FRANKLIN, MERIWETHER's telephone 414-999-6172, and both numbers associated with RODRIGUEZ-PEREZ, 414-426-0464 and 512-940-1862. Case agents reviewed law enforcement data bases and learned that 224-239-0997 was associated with a subject identified as Matthew C. BLAIN (DOB XX/XX/1997) with an associated

Page 80

address of 9951 Chetwood Drive, Huntley, Illinois 60142. FRANKLIN'S cellphone 414-254-8676 was used with cell phone towers in the area of the address associated with BLAIN on the afternoon of January 11, 2022.

247.    Case agent reviewed law enforcement databases and learned that BROWN's Jeep was observed on Automatic License Plate Readers on the morning of January 12, 2023, at 1:56 a.m. in Evansville, Indiana, which is consistent with the information learned from the court authorized electronic surveillance.

248.    Case agents reviewed jail calls completed by MERIWETHER and there was a call between MERIWETHER and FRANKLIN, 414-254-8676, on January 11, 2023.  During this call, FRANKLIN informed MERIWETHER that he (FRANKLIN) was intending to change his cell phone number and provided the number to MERIWETHER which was identified as 414-484-6089.  Case agents have observed that this number has been used in the case by BROWN and appears to be an active number.

### d. Contact between CS, the UC, KING and FRANKLIN following MERIWETHER's arrest

249.    During the week of January 9, 2023, under the direction of case agents, CS conduct a face-to-face meeting with members of the ADTO. CS was directed to visit a Milwaukee-area business, where members of the ADTO are known to frequent. CS arrived at the location and contacted KING inside. The CS and KING discussed MERIWETHER's recent arrest, as KING explained that MERIWETHER was involved in a high-speed pursuit with law enforcement. KING added that MERIWETHER's bail was set at $200,000, and there were no current plans within the ADTO to raise the funds needed to get MERIWETHER released from custody.

250.     CS discussed his/her previous relationship with MERIWETHER, and KING stated that KING was interested in working with the CS, in place of MERIWETHER. KING volunteered that he (KING) and FRANKLIN had firearms and narcotics readily available for distribution to CS. CS stated following this initial conversation, KING departed the business, telling CS that he (KING) was going to contact FRANKLIN. KING returned approximately twenty minutes later. KING stated to CS that FRANKLIN approved KING to work with CS to conduct future firearms and narcotics transactions. KING stated that he (KING) would text his number to CS. Later the same day, CS received an incoming text from telephone (414) 275-6780 indicating the number belong to KING and was instructed to call KING.

251.     Later that same day, CS received an in-coming call from MERIWETHER, using Vermilion County Jail authorized cellphone. This telephone number was identified as (765) 705-0523. I recognized MERIWETHER's voice on the call from past recordings and contacts. During their recorded jail call, MERIWETHER stated FRANKLIN would be reaching out to CS in the near future.  Based on the prior conversation between CS and KING, case agents determined this was regarding discusses of firearms and narcotics transactions. Shortly after MERIWETHER's call, CS received an in-coming call from KING at telephone 414-275-6780, which was recorded by case agents.  During this call KING discussed having two Glock switches available for purchased by CS.

252.     Shortly thereafter KING's call, at approximately 6:52 p.m., CS received a call from FRNAKLIN's telephone (414) 254-8676. During this call, FRANKLIN told CS to reach out whenever CS was ready to conduct a transaction.  Based on my training, experience, and investigation into the ADTO, FRANKLIN's statements were consistent with selling firearms and narcotics to CS.  FRANKLIN stated that the quality of the narcotics would be better than narcotics

Page 82

previously distributed by MERIWETHER. Based on my training and experience, FRANKLIN's statement about the narcotics being "better" would mean a higher purity with less substances being used to cut the narcotics.

253.    Case agents later reviewed the court-authorized electronic surveillance of FRANKLIN's cell phone 414-254-8676. At 5:39 p.m. the same day MERIWETHER contact CS while in custody using 765-705-0523, FRANKLIN received a text message from telephone 765-705-0523. At approximately 5:45 p.m., FRANKLIN received an in-coming call from KING's cellphone 414-275-6780. At approximately 6:52 p.m., FRANKLIN placed an out-going call to CS. Case agents review call detail since approximately July 2022. Those records indicate that KING's telephone 414-275-6780was in frequent contact with FRANKLIN's telephone numbers 414-324-5545, 414-416-0868, and 414-254-8676, MERIWETHER's telephone 414-999-6172 and Kemont BOYD's telephone 414-998-7220.

254.    Case agents believe the above-referenced sequence of telephonic contact between KING, MERIWETHER, and FRANKLIN, prior to CS being contacted, shows a method, and process used by the ADTO to verify and protect their on-going criminal activities. Case agents also believe that KING, intends to replace MERIWETHER, to continue the firearm and narcotics distribution activities under the direction/oversight of FRANKLIN.

255.    On January 21, 2023, FRANKLIN's used telephone number 414-519-2009 to contact with MERIWETHER in Vermillion County Jail. Case agents were able to listen to the recorded call and identified the caller as being FRANKLIN based on other recordings of FRANKLIN during this investigation. Case agents queried FRANKLIN's telephone number 414-519-2009 and determined the service provider was US Cellular.

Page 83

256. On January 24, 2023, FRANKLIN used telephone number 414-519-2009 to also contact the UC. FRANKLIN informed the UC that 414-519-2009 would be FRANKLIN's new number for future transactions. FRANKLIN also informed the UC that FRANKLIN had "two switches" and a "Glock" firearm for sale. FRANKLIN also asked the UC how the UC's "customers" liked the heroin that the UC and CS had purchased on January 19, 2023. In addition, FRANKLIN state that he has a "hook up" for methamphetamine.

257. On January 24, 2023, case agents noted that FRANKLIN put a post on one of his several Facebook accounts, identified with the username "Dontrell Franklin". The post was a picture of FRANKLIN holding a large stack of US Currency with the caption "Police took 40k that ant stop shit this shit ant on me it's in me free chefdon jaun mack mone" (Figure 3).



(Figure 3)

## N. ADDITIONAL INFORMATION REGARDING THE ADTO'S CELL PHONES

258. On October 3, 2022, case agents queried "414-426-0464" via a law enforcement

Page 84

database, which identified the mobile carrier as AT&T.

259.    On January 26, 2022, case agents queried "512-940-1862" via a law enforcement database, which identified the mobile carrier as AT&T.

260.    On October 3, 2022, case agents queried "414-501-9512" via a law enforcement database, which identified the mobile carrier as Sprint, which is now operated by T-Mobile USA.

261.    On October 3, 2022, case agents queried "414-676-0097" via a law enforcement database, which identified the mobile carrier as Metro PCS, which is operated by T-Mobile USA.

262.    On November 29, 2022, case agents queried "**713-281-2632**" via a law enforcement database, which identified the mobile carrier as Verizon.

263.    On December 21, 2022, case agents queried "414-254-8676" via a law enforcement database, which identified the mobile carrier as Sprint, which is now operated by T-Mobile USA.

264.    On December 21, 2022, case agents queried "414-998-7220" via a law enforcement database, which identified a mobile carrier as AT&T.

265.    On December 21, 2022, case agents queried "270-262-6887" via a law enforcement database, which identified a mobile carrier as Verizon.

266.    On December 21, 2022, case agents queried "262-290-1566" via a law enforcement database, which identified a mobile carrier as Verizon.

267.    On January 10, 2023, case agents queried "(414) 275-6780" via a law enforcement databased, which identified a mobile carrier as T-Mobile

268.    I believe the Target Cell Phone, whose service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and

Page 85

conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846.

### III. JURISDICTION

269.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### IV. TECHNICAL BACKGROUND

270.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

#### A. Cell-Site Data

271.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas,

Page 86

and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

272.    Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

273.    I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

274.    As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers

Page 87

are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

275.    I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

276.    Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

277.    Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

278.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

279.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

280.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A frequency

analysis of the telephone communications between Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING, and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING, and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V.    AUTHORIZATION REQUEST

281.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

282.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

283.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the

Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

284. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.      Records and information associated with the cellular devices assigned call numbers

**713-281-2632** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the

custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service

Provider"), a wireless communications service provider that is headquartered at 180 Washington

Valley Road, Bedminster, New Jersey.

2.      Information about the location of **Target Cell Phone**, that is within the possession,

custody, or control of Verizon Cellular.

3.      The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 25, 2023, to present:

i.    Names (including subscriber names, usernames, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.  Local and long-distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.    Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

Page 94

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Cody L. MULLINS, Laron N. KING and other identified and unidentified subjects during the period of January 25, 2023, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Page 96